Argued and submitted November 9, Hood River High School, Hood River, reversed and remanded December 26, 2001

# STATE OF OREGON,
*Appellant,*

*v.*

# ANTHONY LEE MOSLEY,
*Respondent.*

## C 0005-34250; A111675

38 P3d 278

Janet A. Metcalf, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Christopher W. Howard argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals from a pretrial order suppressing evidence obtained in a warrantless search of an automobile, arguing that the search did not violate Article I, section 9, of the Oregon Constitution, or the Fourth Amendment to the United States Constitution, because it fell within the "automobile exception." We conclude, under both the state and federal constitutions, that the automobile exception justified the search. Accordingly, we reverse and remand.

The material facts are undisputed. Just after midnight on May 27, 2000, Portland Police Officer Faw was engaged in undercover surveillance of drug trafficking at a known "high drug and vice area" at the intersection of North Fremont and North Vancouver in Portland. Faw, who had made many arrests for drug offenses in that area, was conducting his surveillance from a concealed location.

Shortly after Faw began watching, defendant caught his attention because defendant and another person were standing near a "fence line,"[1] where many people would briefly approach them and then leave. Faw watched defendant for nearly an hour and a half. During that time, Faw saw defendant engage in 15 to 20 hand-to-hand contacts, in which defendant would put his hand into his left-front pants pocket, pull an item out, hand it to a person, and put something back into his pocket. From time to time, defendant would walk over to a white Cadillac, briefly get into the front passenger side, and then return to the sidewalk. Sometimes, defendant appeared to be using intermediaries. Occasionally, defendant yelled at passing cars. Although Faw could not hear most of what defendant said, he did, on one occasion, hear defendant yell, "Why you so scared, I'll hook you up." Faw believed that defendant was selling illegal drugs.

At approximately 1:30 a.m., Faw abandoned his surveillance to attend to other police business. About an hour later, shortly after 2:30 a.m., Faw returned to the area with Portland Police Officer Derry to see what was happening and

---

[1] According to Faw, a "fence line" is a place where people "usually hang out * * * either to buy drugs or to receive drugs from somebody else."

also to monitor the closing of the Royal Esquire bar. Faw told Derry about his earlier observations. The officers did not initially see defendant on the street, but a few minutes later they saw defendant and his sister, Alysa Griffin, walk from the area of the Royal Esquire toward the white Cadillac, which was parked where it had been earlier. Defendant approached the passenger's side, while Griffin, with the keys in her hand, approached the driver's side. Griffin, who had been drinking, was fumbling with the keys trying to find the right key to fit the door lock. The officers then approached defendant and Griffin.

Faw asked defendant where he was going. Defendant responded that he was going home. When Faw asked defendant where he had been, defendant answered that he had been inside the Royal Esquire all night. Faw then told defendant that he had seen him doing drug sales and was going to arrest him and search him for drugs. Upon searching defendant, Faw found a number of small, individually wrapped bags of marijuana in defendant's front left pocket—the pocket that Faw had seen defendant taking items from earlier that evening.

Meanwhile, Derry was speaking with Griffin. As defendant was arrested and searched, Derry told Griffin that the officers were going to search the car.[2] Griffin refused to consent to a search of the car. Eventually, Griffin gave Derry the car keys, but she did not do so voluntarily.[3] After getting the keys, the officers told Griffin that she could leave, and she walked away.

The officers then searched the car. They found a small wad of tissue paper in the ashtray that contained a few small rocks of crack cocaine. They also found $157 in cash

---

[2] When Derry asked Griffin who owned the car, she responded that it belonged to her. Griffin later told the officers that the car actually belonged to her mother and that she was using it that evening with her mother's permission.

[3] The trial court found that Griffin did not voluntarily hand over the keys "but rather acquiesced to the persistent demands of police, the threat to damage the car, and the implied threat to take her into custody. * * * Under the totality of circumstances her decision to give the keys to police was not a truly voluntary exercise of free will." The state does not challenge that determination on appeal, and it is immaterial to our analysis and disposition.

and some documents with defendant's name on them in the glove box.

Before trial, defendant filed a motion to suppress all evidence seized from his person and from the car. After a hearing, the trial court granted defendant's motion in part by suppressing the evidence found in the car,[4] concluding, *inter alia*, that the warrantless search was not justified under the automobile exception:[5]

> "[I]t is my opinion that the moveable vehicle exception does not apply to this case. Defendant was under arrest and had no access to the vehicle. The only existing exigency was the mobility of the car itself; Ms. Griffin had the keys and perhaps could have driven it away if not restrained by police, but no other exigency existed. Finally, there was no probable cause to believe that there were drugs in the vehicle. There was a one-hour time lapse from the time when police saw drug activity involving the car until the time when officers returned to the vicinity. * * * Because all elements of the automobile exception are not met, the state is not excused from the warrant requirement."

On appeal, the state challenges both predicates of the trial court's conclusion that the automobile exception did not apply, *viz.*, that the automobile was not "mobile" and that, in all events, as of 2:30, there was no probable cause that controlled substances or evidence of trafficking of controlled substances could be found in the white Cadillac. As amplified below, we agree with the state that both "mobility" and probable cause were established here and, thus, that the search fell within the automobile exception.

■   We first address the availability of the automobile exception under Article I, section 9, of the Oregon Constitution.[6] *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983)

---

[4] Defendant also sought to suppress the evidence seized from his person. At the suppression hearing, however, defendant conceded that the police had probable cause to arrest him based on Faw's earlier observations and, thus, that the search of his person was a valid search incident to arrest.

[5] The state argued, alternatively, that Griffin consented to the search through her relinquishment of the keys. As noted, 178 Or App at 477 n 3, the court rejected that contention.

[6] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

(court must address state constitutional claims before addressing analogous federal constitutional claims). In *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986), the court first recognized the automobile exception for purposes of Article I, section 9. *See generally State v. Coleman*, 167 Or App 86, 2 P3d 399 (2000) (chronicling subsequent automobile exception case law in Oregon). As formulated in *Brown*, under the automobile exception, an officer may conduct a warrantless search of a vehicle provided: "(1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle." 301 Or at 274. As noted, the trial court determined that neither of those cumulative conditions was satisfied here.

We first address the "mobility" component. Our analysis and disposition is ultimately controlled by *State v. Burr*, 136 Or App 140, 901 P2d 873, *rev den* 322 Or 360 (1995).

"Mobility" under the automobile exception is determined as of the time the police first encounter the vehicle. *Coleman*, 167 Or App at 94. Although the meaning and contours of "encounter" as used in the case law are somewhat amorphous, it is clear that merely observing a vehicle from a distance without any show or exercise of police authority is not an "encounter" for purposes of the automobile exception. *See State v. Warner*, 117 Or App 420, 423, 844 P2d 272 (1992) ("An 'encounter' does not include observation from a distance.").

Thus, Faw's clandestine observation of defendant and his interactions with the Cadillac between shortly after midnight and 1:30 did not constitute an "encounter" for purposes of determining "mobility" under the automobile exception. Rather, the benchmark encounter occurred shortly after 2:30 when the officers, with the objectives of arresting defendant and searching the car, approached defendant and Griffin as they were about to get into the car.[7]

---

[7] *Accord Coleman*, 167 Or App at 94-95 (automobile exception did not apply where, even though the defendant was within a few feet of the car with keys in his pockets when stopped, the police had not yet focused their attention on the car at that time). Here, in contrast to *Coleman*, when the officers approached defendant and Griffin, they believed, based on Faw's earlier observation, that there was a nexus between the Cadillac and defendant's suspected drug trafficking.

We turn, then, to *Burr*. In *Burr*, a police officer stopped behind a pickup that was parked on the shoulder of the road with its lights off. The officer saw the four defendants standing outside the pickup attempting to load a deflated rubber raft into the pickup's bed. The officer approached the defendants and asked to see their identification. After running an identification check and discovering an outstanding arrest warrant for one of the defendants, the officer placed that defendant under arrest. Another officer arrived on the scene and immediately smelled a strong odor of marijuana coming from the bed of the pickup. That officer moved the raft and saw marijuana sticking out of one of the two ice chests that were concealed underneath the raft. The officer opened that ice chest and found freshly cut marijuana. The trial court granted the defendant's motion to suppress, concluding that the automobile exception did not apply.

■   We reversed.[8] Our holding proceeded from two premises. First, the vehicle was constructively "mobile" "because its occupants were in a position to operate it and leave in it immediately when the police first encountered it." *Burr*, 136 Or App at 149 (citing *State v. Cromwell*, 109 Or App 654, 820 P2d 888 (1991)).[9] Second, adopting a narrower characterization of "mobility" in such circumstances would impractically elevate form over substance in that the exception would, under any view, become applicable as soon as the vehicle actually started to move. *Id.* In sum:

> "The rationale underlying the automobile exception is to prevent evidence of criminal activity from being quickly moved out of the locality in which the warrant must be sought. *Brown*, 301 Or at 275. * * * The fact that defendants were not in the cab of the vehicle is a mere fortuity.

---

[8] Judge Armstrong vigorously dissented. *Burr*, 136 Or App at 150 (contending, *inter alia*, that the majority's analysis was irreconcilable with *State v. Kock*, 302 Or 29, 725 P2d 1285 (1986)).

[9] In *Cromwell*, we held that the automobile exception applied. In that case, the police first encountered the defendant's pickup, it was parked—with the defendant in the driver's seat—in the middle of the roadway with its engine off but its parking lights on. We held that, although the vehicle was motionless at the time the officers first encountered it, it remained "mobile" because the "defendant could have driven away at any moment. The fact that defendant had not yet turned the key was merely fortuitous." *Contra Burr*, 136 Or App at 153 (Armstrong, J., dissenting) (asserting that *Cromwell* "should be overruled").

*They need only have taken a few steps to have placed themselves in the vehicle in order to leave.* In the light of the rationale for the rule, it would be a curious result to hold that the pickup was not mobile because defendants were standing outside the cab instead of sitting inside it when either circumstance would permit the driver to immediately drive off. * * *

"* * * * *

"[U]nder the dissent's analysis, the officers would have been required to wait at the scene until defendants got into the vehicle and moved it before making a permissible stop and search. That analysis exalts form above substance because the probable cause to search existed as soon as the officer smelled the marijuana. *It makes little sense to interpret the constitutions in a way that requires the officer to permit the vehicle to roll several feet before effecting the search.* Under the circumstances of this case, the reason for the *per se* automobile exception exists whether the driver of the vehicle is seated behind the steering wheel or is outside the car door." *Burr,* 136 Or App at 149-50 (emphasis added).

The circumstances here are indistinguishable from those in *Burr.* At the point of encounter, defendant and Griffin "need only have taken a few steps[10] to have placed themselves in the vehicle in order to leave." *Id.* at 149. Here, as in *Burr,* to have required the officers to wait until the car had actually started to move to invoke the automobile exception would "exalt form above substance." *Id.* The car was mobile when the police first encountered it.[11]

We turn to the exception's second component, *viz.,* that the police must have "probable cause to believe that a person's automobile * * * contains contraband or crime evidence[.]" *Brown,* 301 Or at 276. Here, as noted, defendant did not dispute that, as of 2:30, the police had probable cause to

---

[10] At most.

[11] Defendant contends that the automobile exception is inapplicable here because, by the time the police began searching the car, defendant was in custody and Griffin had left, giving Derry her keys—and, thus, there was no reasonable likelihood that the car would be moved. That argument measures "mobility" from the wrong point of time. As noted, "mobility" is measured from the point of "encounter" and not from the time the search commences. Indeed, in many, perhaps most, automobile exception cases, the driver is in custody by the time the search begins. *See, e.g., Brown,* 301 Or 268; *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986).

arrest him for drug related offenses and to make a valid search incident to arrest of his person, based on Faw's observations between midnight and 1:30. Nor does defendant dispute that there was probable cause to search the Cadillac as of 1:30.[12] Rather, defendant's contention—which the trial court necessarily endorsed—is that the probable cause to search the car as of 1:30 somehow dissipated or became "stale" in the intervening hour. We disagree. *See State v. Martin*, 327 Or 17, 956 P2d 956 (1998).

In *Martin*, a police officer witnessed the defendant make a hand-to-hand transaction in an area where "drug dealing was going on 'twenty-four hours a day, seven days a week.'" 327 Or at 20. The officer did not arrest the defendant at that point because he was not yet on duty. Two hours later, the officer returned to the area where he had seen the defendant earlier and saw the defendant standing on the same street corner. The police officer arrested the defendant and searched him, finding cocaine on his person. The defendant moved to suppress, and the trial court allowed suppression because, "although [the officer] believed that he earlier had observed a drug transaction, that belief was not objectively reasonable, without some observation that defendant actually had exchanged something tangible with someone in the van." *Id.* at 21. We affirmed the order of suppression, but the Supreme Court reversed:

> "From [the officer's] testimony, we have no difficulty concluding that he subjectively believed that defendant had committed a crime. Under the totality of the circumstances, we further conclude that [the officer's] belief was objectively reasonable. Especially significant, in our view, is the fact that *defendant was back at the corner two hours after his encounter with the van.* Given all that [the officer] already had witnessed and the specific nature of that location as a drive-up drug dispensing location near 'crack central,' it was more likely than not that defendant was dealing drugs at that corner and was, when [the officer] saw him the second time, actually in possession of drugs." *Id.* at 22 (emphasis added).

---

[12] Defense counsel explicitly acknowledged that matter during oral argument to this court.

Thus, in *Martin,* the two-hour lapse of time between the officer's observations and the defendant's arrest did not obviate probable cause.

■ *Martin* controls here. When the officers returned to the area where defendant had been engaged in continuous drug dealing activity an hour before, defendant was still in the area, and the Cadillac to which he had repeatedly returned during his earlier dealings was parked in the same spot. Faw's earlier observations of defendant's interactions with the Cadillac established probable cause that, at least as of 1:30, defendant's "stash" of drugs for distribution was in the car and that other evidence of distribution, including packaging material and proceeds, could be found in the car. Even assuming the speculative possibility that defendant completely sold the balance of his inventory (except for the packaged marijuana found on his person) before the officers returned, nothing on this record shows that the mere passage of one hour obviated probable cause with respect to finding other evidence of distribution, including packaging materials and proceeds, in the car. There was probable cause to search the car as of 2:30. Thus, the second *Brown* component was established, and the search fell within the automobile exception for purposes of Article I, section 9.

■ We proceed, briefly, to defendant's alternative federal constitutional argument. Under the Fourth Amendment to the United States Constitution,[13] a vehicle, because of its ready mobility, may be searched without a warrant if the police have probable cause to believe it contains contraband. *California v. Carney,* 471 US 386, 105 S Ct 2066, 85 L Ed 2d 406 (1985); *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970); *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925). There is no separate exigency requirement. *Maryland v. Dyson,* 527 US 465, 466-67, 119 S Ct 2013, 144 L Ed 2d 442 (1999); *U.S. v. Ross,* 456 US 798, 809, 102 S Ct 2157, 72 L Ed 2d 572 (1982). Thus, "[i]f a

---

[13] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 US 938, 940, 116 S Ct 2485, 135 L Ed 2d 1031 (1996), *citing Carney*, 471 US at 393. Because the car here was "readily mobile" and because the officers here had probable cause to believe that the car contained contraband, the search fell within the "automobile exception" as formulated under the federal constitution.

The trial court erred in allowing defendant's motion to suppress the evidence obtained from the search of the vehicle.

Reversed and remanded.