Argued and submitted October 15, 2004, Grants Pass High School, Grants Pass,
reversed and remanded March 2, 2005

## STATE OF OREGON,
*Respondent,*

*v.*

## JASON PAUL HITE,
*Appellant.*

## 200206778; A118928

107 P3d 677

David E. Groom argued the cause and filed the brief for appellant.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Neufeld, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals from convictions for unauthorized use of a vehicle, ORS 164.135, possession of a stolen vehicle, ORS 819.300, felon in possession of a firearm, ORS 166.270(1), and possession of a controlled substance, ORS 475.992(4)(b). He assigns as error the trial court's denial of his motion to suppress physical evidence, its refusal to give a less satisfactory evidence jury instruction, and its imposition of a departure sentence based on aggravating factors that the state did not prove to the jury beyond a reasonable doubt. We reverse and remand.

We state the facts in the light most favorable to the state. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). Officer Rager received a report that a stolen car was parked at a restaurant in the River Road area of Eugene. When Rager drove up to the restaurant, he saw a car matching the description of the stolen car in the parking lot. He also saw defendant and another person, Gray, walking away from the car and into the restaurant. Rager waited for other officers to arrive to assist him. When they arrived, one of the officers parked his patrol car behind the stolen car, blocking it in its parking space. Rager and Officer Hagen went into the restaurant, arrested defendant, placed him in handcuffs, and took him outside. After reading defendant his *Miranda* rights, Rager asked him where he had gotten the car. Defendant stated that he had found it with the keys in the ignition. He admitted that he did not have permission to use the car. He told Rager that the keys were in his pocket, and Rager retrieved them.

Rager then went to the car, which was parked on the far side of the parking lot about 25 yards from where he left defendant on the sidewalk with another officer. The rear passenger window was broken out, and there was glass in the back seat. The car stereo was missing. Rager opened the trunk, where he found two backpacks and several garbage bags with clothes in them. Rager asked defendant about the items in the trunk. Defendant initially said that all the items belonged to him, but then stated that only paperwork in the backpacks belonged to him. He told Rager that he had gotten

the backpacks from a man named Ned, who had been at the motel where defendant was staying, and that Ned had packed the backpacks for him. Rager asked for permission to search the backpacks. Defendant did not consent to a search. Rager testified that defendant had a concerned look on his face, so he asked defendant if there was anything in the backpacks that Rager should be concerned about, specifically, a gun. Defendant said, "There might be." Rager then opened the backpacks. In the first backpack, he found a checkbook in the name of a person other than defendant. In the second backpack, he found a gun.

Meanwhile, Hagen took Gray to one of the patrol cars, put her in the back seat, and questioned her about the stolen car. When Hagen finished questioning Gray, he offered to assist Rager, who was then searching the backpacks. Hagen found items of mail that were not addressed to defendant, more checkbooks, an insurance card belonging to the car's owner, car keys that appeared to have been filed down, and a small metal file. In addition, Hagen found a black leather cell phone case in one of the backpacks. Inside the case, he found several hypodermic needles and a plastic packet containing methamphetamine. Rager then took defendant to jail.

Before trial, defendant filed a motion to suppress the physical evidence that the officers found in the car, arguing that, because the officers conducted the search without obtaining a warrant, the search was unlawful. At the suppression hearing, Rager testified that he decided to search the backpacks for a gun because he was concerned that either he, defendant, or a bystander could be shot if the gun discharged while being transported in the trunk of his patrol car. He testified further that he searched the backpacks because he believed that he might find other evidence of vehicle theft, such as pry bars, screwdrivers, and "shaved keys."[1] Rager stated that he also believed that he might find property taken from the stolen car and from other stolen vehicles. Hagen also testified at the suppression hearing. He stated that, when he found the checks, mail, and other paperwork in

---

[1] Hagen testified that a shaved key is a key that has been filed down, which facilitates its use to gain entry into other cars of the same make and model.

defendant's backpacks, he believed that defendant had stolen them. He stated that he believed that the cell phone case could contain other evidence related to those crimes or evidence related to the stolen car.

The state argued that the search was lawful under the exception to the warrant requirement for searches incident to lawful arrest for evidence related to the crime of arrest and to ensure officer safety.[2] The trial court denied the motion to suppress. In the ensuing trial, the state introduced into evidence many of the items found in the backpacks, including the gun, the file, the keys, and evidence of the methamphetamine. A jury convicted defendant of all charges.

■　In his first assignment of error on appeal, defendant argues that the trial court erred in denying his motion to suppress. He renews his contention that the search of the items found in the trunk of the stolen car was unlawful because the officers did not first obtain a search warrant. Defendant argues, among other things, that Rager and Hagen could not search the backpacks incident to his arrest for evidence or to ensure the officers' safety, because he was not in the car when he was arrested, was handcuffed immediately, and had no access to the contents of the car. He argues further that the officers could not lawfully open the cell phone case without first obtaining a warrant.[3]

In response, the state argues that the initial search was reasonable to protect the officers from the possibility of an inadvertent discharge of the firearm. It also asserts that Rager had probable cause to arrest defendant for unauthorized use of the car and, therefore, was authorized to search for evidence related to that offense. The state argues further that, as the officers discovered evidence of other thefts while

---

[2] The state also argued that the evidence was discovered during an authorized inventory of defendant's possessions. However, the state abandoned that argument at trial, and it is not at issue in this appeal.

[3] Defendant does not contend on appeal that Rager lacked authority to open the trunk of the car. *See State v. Garoutte*, 104 Or App 418, 421, 801 P2d 881 (1990) ("Once defendant was lawfully removed from the stolen car, any personal privacy right that he might have had as to its use and occupancy without the consent of the owner vanished. Therefore, when the interior of the car was searched, no personal right of defendant under [Article I, section 9,] was violated.").

conducting the initial search, they developed probable cause to arrest defendant for other offenses and, thus, to search for other evidence related to those crimes. According to the state, the search of the cell phone case was permissible because the case could have contained evidence related to any of the thefts that the officers at that point suspected defendant of having committed.[4]

Article I, section 9, of the Oregon Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." A search conducted without a warrant is presumed to be unreasonable. *State v. Atkin*, 190 Or App 387, 390, 78 P3d 1259 (2003). However, if the state demonstrates that a search comes within a recognized exception to the warrant requirement, evidence obtained in the search need not be suppressed. *Id.* One such exception is for a "search incident to lawful arrest." There are three valid justifications for a search incident to arrest: to protect the officers' safety or public safety, to prevent the destruction of evidence or the escape of the defendant, and to discover evidence relevant to the crime for which the defendant is being arrested. *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994). Only the first and third justifications are at issue here.

A warrantless search incident to arrest must, at a minimum, involve a valid arrest. *State v. Caraher*, 293 Or 741, 757, 653 P2d 942 (1982). A valid arrest requires that the officer have "probable cause to believe that the suspect has committed an offense" before the arrest occurs. *State v. Owens*, 302 Or 196, 203, 729 P2d 524 (1986). Defendant does not challenge the validity of his arrest for unauthorized use of

---

[4] The state also argues that defendant had no privacy interest in the backpacks because he disclaimed ownership of them. However, a person in possession of a container may have a protected interest in the container even if he or she denies ownership of it. *State v. Morton*, 326 Or 466, 469-70, 953 P2d 374 (1998). It was clear that defendant had possessed the backpacks, and nothing he said to the officers demonstrated an intention to relinquish a possessory or privacy interest in them. Rather, he told Rager that another person had packed the backpacks for him, and he declined to consent to the search of the backpacks. *Cf. State v. Standish*, 197 Or App 96, 103, 104 P3d 624 (2005) (holding that the defendant had abandoned any possessory or privacy interest in bags found in the truck he was driving where he "stated that he did not own the bags, did not know who did, and did not know what was in them"). We reject the state's argument without further discussion.

the vehicle. However, a valid custodial arrest is necessary, but not sufficient, to trigger the exception. To be reasonable under Article I, section 9, a search incident to arrest must be close to the arrest in time, space, and intensity. *Caraher*, 293 Or at 757-58.

■      With those principles in mind, we consider first whether the search of the backpacks was a lawful search incident to arrest for evidence related to the crime of unauthorized use of the vehicle. Where the search is for evidence related to the crime of arrest, the scope of a permissible search is limited to the arrestee's person and to the belongings in his or her immediate possession at the time of the arrest:

> "Under Article I, section 9, a search incident to arrest for crime evidence is limited to a search for evidence of the crime for which the arrestee is arrested. In order to justify a search, incidental to an arrest, the arrest must be for a crime, evidence of which reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest. Thus, for example, if the person is arrested for a crime which ordinarily has neither instrumentalities nor fruits which could reasonably be concealed on the arrestee's person or in the belongings in his or her immediate possession, no warrantless search for evidence of that crime would be authorized as incident to that arrest."

*Owens*, 302 Or at 200.

As noted, the state contends that Rager reasonably suspected that the backpacks could contain evidence including tools used to steal the car and items stolen from the car, such as the car stereo.[5] The problem with the state's argument is that, although the backpacks could have contained such evidence, they were not within defendant's control at the time of the arrest. Defendant was arrested inside the restaurant, so any search was limited to defendant's person and

---

[5] The state also argues that, once defendant had admitted that the backpacks might contain a gun, the initial search was justified as a search incident to arrest for felon in possession of a firearm. However, nothing in the record indicates that the officers knew that defendant previously had been convicted of a felony. Thus, they did not have probable cause to arrest him for that offense and, consequently, could not search for evidence of it. *Owens*, 302 Or at 203.

the belongings in his immediate possession inside the restaurant. *See State v. Walker*, 113 Or App 199, 204, 830 P2d 633, *rev den*, 314 Or 574 (1992) (search of a car not justified as incident to arrest where the defendant was one-half block away from the car when arrested); *State v. Giffen*, 98 Or App 332, 334, 778 P2d 1001 (1989) (car parked 100 feet from where the defendant was arrested). It follows that a warrantless search for evidence related to the unauthorized use of the vehicle or the theft of its contents was not justified.

We turn next to the state's argument that the search was lawful incidental to defendant's arrest because it was necessary to ensure the officers' safety or public safety. Defendant again contends that, because the backpacks were not in his immediate control, he did not pose any threat to the officers' safety. Defendant notes that, when Rager became concerned about the possibility of a gun being in the backpacks, defendant was handcuffed and on the sidewalk, where 25 yards and a parked patrol car separated him from the backpacks in the trunk of the stolen car. The state responds that, even though defendant was not in immediate possession of a weapon, the possible presence of a gun in one of the backpacks nevertheless created a serious risk of harm because it could accidentally discharge while being transported. Under the circumstances, according to the state, it was reasonable for the officers to expand the scope of the search to the contents of the backpacks.

An officer is permitted to take

> "reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

*State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987); *see also State v. Cocke*, 161 Or App 179, 193, 984 P2d 321 (1999), *rev'd on other grounds*, 334 Or 1, 45 P3d 109 (2002) ("[T]here must be specific and articulable facts that the persons remaining in the house could present an immediate threat to the officer's safety."). When a search incident to arrest is conducted

to ensure officer or public safety, the circumstances may justify a search that is somewhat broader in scope than a search for evidence. For example, in *Cocke*, we held that

"Article I, section 9, of the Oregon Constitution, authorizes officers, when making an in-home arrest, to take reasonable steps to protect themselves if the officer has a reasonable suspicion, based on specific and articulable facts, that there could be persons present posing an immediate threat of danger to the officers or others. Such steps can include cursory searches of areas of a home beyond the immediate reach of the arrestee."

161 Or App at 190. However, "such searches can be reasonable only under very narrow circumstances that govern both the inception and execution of the search." *Id.*

*Cocke* illustrates the point. In that case, we concluded that Article I, section 9, did not prohibit a protective sweep of the house in which a suspect had been arrested. The house had seven bedrooms that were rented out as separate apartments. When one tenant was arrested, two or three others were present, but it was not known whether the other tenants were in their apartments. One of the arresting officers had been told a month earlier that some of the occupants had several firearms, and the police were required to remain in the house for 25 to 30 minutes to inventory evidence that had been seized. The protective sweep consisted of checking every unlocked room and any place that a small person could hide. The officers found contraband in the defendant's room. *Id.* at 181-82. We concluded that the search was permissible because the officers were reasonably concerned that another person could be in the house who might present an immediate risk of harm to them. *Id.* at 193-94.

The Supreme Court reversed. Although it did not reject the general proposition that a protective sweep is permissible where necessary to ensure officer safety, it stated that "the officers could articulate only a generalized concern that was based on stale information and that focused neither on [the] defendant nor on his apartment." *Cocke*, 334 Or at 10. In other words, the record did not establish that there was an immediate danger that justified a warrantless intrusion into the defendant's room.

Assuming that the risk of a gun accidentally firing could justify searching in a place beyond an arrestee's control, the circumstances here were not sufficiently immediate to excuse the need for a warrant. Rager testified that he was concerned that a gun in the backpacks could fire in the trunk of his patrol car while being transported. He did not suggest that there was any risk as long as the backpacks remained in the trunk of the stolen car. Nor did he offer any reason to believe that the backpacks had to be moved before a warrant could be obtained. The officer safety ground for the exception is applicable only when it would be unreasonable to expect an officer to obtain a warrant because the officer is faced with an immediate risk of harm. The risk in this case could have been delayed simply by leaving the backpacks in the car where it was parked while the officers obtained a warrant. Police officers cannot rely on exigencies of their own creation to justify a warrantless search. *See State v. Price*, 92 Or App 669, 673, 759 P2d 1130 (1988) ("[A]n officer cannot create exigent circumstances by his own action or inaction. The inconvenience and delay in obtaining a warrant does not, alone, justify a warrantless seizure." (Citation omitted.)); *see also State v. Chinn*, 231 Or 259, 268, 373 P2d 392 (1962) (noting that "a search might be held unreasonable if the officers had had ample opportunity to consult a magistrate and obtain a search warrant but failed to do so"). Because the possibility that the backpacks might have contained a gun presented no immediate risk of harm, the search was not justified as a search incident to arrest for the purpose of ensuring officer safety.

It follows that the search of defendant's backpacks was invalid. Because the evidence found in them should have been suppressed, defendant is entitled to a new trial.

As noted, defendant's second assignment of error concerns the trial court's refusal to give a less satisfactory evidence jury instruction. Defendant also assigns error to the trial court's imposition of an upward departure sentence based on aggravating factors that were not encompassed within the jury verdict. *See State v. Dilts*, 337 Or 645, 652, 103 P3d 95 (2004). Because defendant is entitled to a new trial, we need not consider those assignments of error.

Reversed and remanded.