Argued and submitted April 20 at Summit High School, Bend, affirmed September 28, 2005, petition for review allowed January 31, 2006 (340 Or 106)

# STATE OF OREGON,
*Appellant,*

*v.*

# KATHY LOUISE MEHARRY,
*Respondent.*

## CFH030171; A124222

120 P3d 520

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Annetta L. Spicer argued the cause for respondent. With her on the brief was Kuhn & Spicer.

Before Edmonds, Presiding Judge, and Schuman, Judge, and Sullivan, Judge pro tempore.

EDMONDS, P. J.

**EDMONDS, P. J.**

The state appeals a pretrial order suppressing evidence obtained in a warrantless search of an automobile, arguing that the search fell within one of three exceptions to the warrant requirement: (1) search incident to arrest; (2) the "automobile exception"; or (3) probable cause plus exigent circumstances. We review the trial court's legal conclusions for errors of law, and we are bound by its factual findings if there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We affirm for the reasons that follow.

On November 8, 2002, the Umatilla Police Department received a report about a green van, which was being driven dangerously, traveling westbound on Sixth Street through Umatilla. The report was made by Roxbury, a local fire chief. Officer Tarvin responded to the call, located the vehicle, and followed it without using his lights or siren. He observed the vehicle pull into the parking lot of a Zip Trip and saw defendant "stagger[ ]" as she exited the vehicle and went into the store. Once defendant was inside the store, Officer Tarvin pulled into the parking lot, parked his patrol car behind defendant's vehicle so that it was blocked in its parking space, and called Roxbury, who had continued to follow the vehicle until the officer arrived. Roxbury told the officer that he had followed the vehicle through town; that it swerved, nearly hitting a car and a pedestrian; and that it traveled at erratic speeds until it pulled into a Zip Trip convenience store, where the driver got out and went into the store.

After speaking briefly to Roxbury, Officer Tarvin entered the store in order to contact defendant. As he approached her, he observed that she was hunched over the checkout counter with her head down, and he described her appearance as "lethargic, dazed, [and] very stuperous." The officer described defendant's speech as slow and slurred, noting that she had difficulty putting words together. She also had bloodshot eyes, and there was blood on the back of her hand near her little finger from an apparent puncture wound the size of a needle. He asked defendant questions about her condition, including whether she was on any medications.

Defendant told the officer that she had taken Cozar for blood pressure, as well as Estratest, Prevacid, Paxil, and Xanax. As Officer Tarvin spoke with defendant, she "sway[ed] badly." The officer then asked her to perform field sobriety tests. Defendant asked why and assured the officer that she had not been drinking alcohol. The officer told defendant that she "appeared to be under the influence." Defendant then agreed to take the field sobriety tests, and the officer took her outside the store to his vehicle, where she performed the tests.

Thereafter, defendant was placed under formal arrest. Because Officer Tarvin did not smell the odor of alcohol on defendant, he believed that another form of intoxicant was the cause of her impairment. The officer placed defendant under arrest and searched her person, finding a syringe with a needle attached. He also conducted a search of the vehicle, looking for evidence of intoxication. The doors to the vehicle were closed, and the windows were tinted. The officer looked through the windows of the vehicle and saw a young boy standing in the back seat. He searched the vehicle for evidence of intoxication, including the inside of a cardboard box, and inside the glove compartment and the center console between the front seats. As a result of his search, the officer found evidence of controlled substances.

On the basis of the evidence discovered during the search, defendant was charged with 11 counts of tampering with drug records, ORS 167.212; two counts of possession of a controlled substance, ORS 475.992; seven counts of tampering with physical evidence, ORS 162.295; driving under the influence of intoxicants, ORS 813.010; and recklessly endangering another person, ORS 163.195. Defendant filed a motion to suppress the evidence obtained during the warrantless search of her vehicle. The trial court determined that "[b]y the time that she was out and doing field sobriety tests, [defendant] was under arrest." Because, in its view, defendant's vehicle was not in her immediate possession at the time of the arrest, the trial court concluded that the search of her vehicle was not justified on any of the grounds asserted by the state. It therefore granted defendant's motion, and the state appeals from that ruling.

Article I, section 9, of the Oregon Constitution guarantees "the right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable search, or seizure." A search conducted without a warrant is presumed to be unreasonable. *State v. Atkin*, 190 Or App 387, 390, 78 P3d 1259 (2003). However, if the state demonstrates that a search comes within a recognized exception to the warrant requirement, evidence obtained in the search need not be suppressed. *Id*. One such exception is for a "search incident to lawful arrest." There are three valid justifications for a search incident to arrest: to protect the officer's safety or public safety, to prevent the destruction of evidence or the escape of the defendant, and to discover evidence relevant to the crime for which the defendant is being arrested. *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994). The state's argument that the search of defendant's car was lawful because it was a search incident to an arrest focuses on the third justification.

In order to search incident to an arrest, the officer conducting the search must have probable cause to believe that the suspect has committed an offense. ORS 133.310. Probable cause to arrest has both a subjective and an objective component. The arresting officer must believe more likely than not that an offense has been committed and that the things seized are evidence of that offense, and that belief must be objectively reasonable. *State v. Owens*, 302 Or 196, 729 P2d 524 (1986). Subjective probable cause may be reasonably inferred from the circumstances and the law does not require specific testimony that the officer believed that there was probable cause. *State v. Bickford*, 157 Or App 386, 970 P2d 234 (1998), *rev den*, 329 Or 589 (2000).

The facts in this case demonstrate that the officer formed subjective probable cause to arrest defendant for driving while under the influence before he took defendant outside the store to perform field sobriety tests, and that his subjective belief was objectively reasonable. At the point in time when the officer informed defendant that she "appeared to be under the influence[,]" he had observed her driving a motor vehicle, stagger as she left the motor vehicle, and visibly sway in his presence while in store; he also had information from a reliable source that she had driven erratically before arriving at the store. The remaining question is whether he was entitled to search her car for evidence of the offense of

driving while under the influence, having acquired probable cause to arrest her after she left the car and went into the store.

■ "Under the Oregon Constitution, a search incident to arrest is valid when it relates to a crime which there is probable cause to believe the arrestee has committed, and when it is reasonable in all the circumstances." *Owens*, 302 Or at 204. The scope of a lawful search incident to an arrest was defined in *State v. Caraher*, 293 Or 741, 757-60, 653 P2d 942 (1982). Relying on language from *State v. Chinn*, 231 Or 259, 373 P2d 392 (1962), the *Caraher* court explained,

> "The *Chinn* court discussed the reasonableness of the search incident to arrest as to time, space and intensity and concluded that '[t]he proper test of a reasonable search is * * * based upon the entire factual situation.' 231 Or at 273. The court then asked: 'Was the search close both in time and space to the arrest? Furthermore, was the intensity of the search commensurate both with the crime and what was known of the criminal? Finally, there is the question of the causal relationship between the arrest and the search.' *Id.*"

293 Or at 758.

The trial court ruled in this case that the search of defendant's vehicle incident to her arrest was unreasonable because the vehicle was not in her immediate possession at the time of her arrest. Whether a search incident to an arrest is lawful depends on its own facts. "There is no 'container rule' that sets precise limits on the scope of such a search." *State v. Hartley*, 96 Or App 722, 725, 773 P2d 1356, *rev den*, 308 Or 331 (1989). In this case, Tarvin testified that he conducted "a search incident to arrest" "looking for a reason for her driving under the influence of intoxicants." When asked what he was looking for, he replied, "Any substance which would impair a person's ability to drive a motor vehicle." We conclude that it was reasonable for Tarvin to believe that evidence of the source of defendant's impairment could be found in the vehicle that he and Roxbury had observed defendant driving immediately before the arrest occurred. Tarvin also observed her stagger as she got out of the car. Only moments

elapsed from the time of those observations until Tarvin contacted defendant inside the store, making the search close both in time and space to when Tarvin formed probable cause to make the arrest. Also, in light of the crime for which defendant was arrested, the intensity of the search in the car conducted by the officer was constitutionally permissible. The more difficult question is whether the search of the car itself was reasonable as incident to defendant's arrest.

In *Owens*, the court explained, "In order to justify a search, incidental to an arrest, the arrest must be for a crime, evidence of which reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest." 302 Or at 200. We understand the reason for that limitation on the scope of a search incident to arrest to exist because of the nature of a search itself. A search or a seizure occurs when an intrusion by a government agent into a person's privacy or possessory interests occurs. *State v. Rhodes*, 315 Or 191, 196-97, 843 P2d 927 (1992). A lawful search incident to an arrest is limited in scope to the person and to the belongings in the person's immediate possession because there is no further intrusion into the possessory and privacy interests that an arrested person has in his or her person and in the belongings in the person's immediate possession. Such an intrusion has already occurred as a result of the arrest or the seizure of the person, thereby causing, in general, any previously held privacy or possessory interest to have dissipated. Thus, belongings in the arrested person's immediate possession can be properly thought of as extensions of the person of the arrestee for purposes of determining the reasonableness of the scope of a search incident to an arrest.

Here, it cannot be said that defendant's vehicle was an extension of her person, whether the focus is on the point in time that the officer had probable cause to arrest defendant in the store or after he took her from the store and conducted the field sobriety tests in the proximity of the car. Our decision in *State v. Hite*, 198 Or App 1, 107 P3d 677 (2005), illustrates that point. We held that the search of backpacks in the trunk of a stolen car exceeded in scope what was permissible under Article I, section 9, because the defendant was arrested inside a restaurant after he had left the car. In *Hite*,

an officer received a report that a stolen car was parked at a restaurant. When he drove to the restaurant, he saw a car matching the description of the stolen car in the parking lot and defendant walking away from it into the restaurant. The officer and another officer went into the restaurant, arrested the defendant and took him outside. The defendant admitted that he did not have permission to use the car and that he had found it with the keys in the ignition. One of the officers then went to car and opened the trunk with the keys that he had retrieved from the defendant, where he found two backpacks and several garbage bags with clothes in them. Eventually, the officers searched the backpacks without the defendant's consent, a search that led to the discovery of a gun, a small metal file, car keys that appeared to have been filed down, and methamphetamine. The state contended that the officer reasonably believed that the backpacks could contain evidence including tools used to steal the car and items stolen from the car, such as the car stereo. We reasoned, however,

> "The problem with the state's argument is that, although the backpacks could have contained such evidence, they were not within defendant's control at the time of the arrest. Defendant was arrested inside the restaurant, so any search was limited to defendant's person and the belongings in his immediate possession inside the restaurant."

198 Or App at 7-8.

The state, however, relies on our decision in *Hartley*. At first blush, our decision in *Hite* and the line of cases it follows would appear to be in conflict with *Hartley*. In that case, the police received a report about a man pointing a gun at persons in the parking lot of a restaurant. When the police arrived at the parking lot, they observed the defendant close the trunk of a parked car, walk around to the front of the car, and open the driver's side door. After detaining the defendant, the officers interviewed witnesses and concluded from their statements that the gun was in the trunk of the defendant's car. Thereafter, the police opened the trunk, searched it, discovered the gun, and seized it. We held under the circumstances that the search of the car was reasonable in scope. 96 Or App at 726. According to the state, *Hartley* stands for the proposition that "the permissible area to be .

searched extends to the defendant's general vicinity." Thus, it follows, under the state's argument, that because defendant was in the general vicinity of her car while in the store and while the field sobriety tests were being performed, the search of her car was reasonable in scope.

We decline to adopt the state's proposed rule because it would expand the scope of a reasonable search incident to an arrest beyond that defined by *Owens*. Moreover, the facts in *Hartley* are consistent with the understanding that the scope of a reasonable search incident to an arrest must be confined to those belongings that are in the immediate possession of the arrestee. It was reasonably inferable from the police observation of the defendant closing the trunk lid of the car that he was using the trunk as a container for his belongings in the same way that he might use the pocket of a jacket he was wearing, or a briefcase that he was carrying. Also, the car and its trunk were in his immediate possession at the time of his detention, inasmuch as he was also observed to open the driver's door immediately after closing the trunk lid. In contrast, defendant's car was in the parking lot at the time she was contacted in the store. Consequently, it cannot be said that it was in her immediate possession and was an extension of her person. We conclude therefore that the trial court did not err in rejecting the state's argument based on a search incident to an arrest.

Next, the state argues that the search of defendant's vehicle was lawful under the "automobile exception" to the warrant requirement because the search was supported by probable cause and the car was mobile. One of the leading cases on when a vehicle is "mobile" for purposes of the "warrantless search automobile exception" is *State v. Kock*, 302 Or 29, 725 P2d 1285 (1986). In that case, police had the defendant's vehicle under surveillance while it was parked in the parking lot of a store. They observed the defendant leave the store, put a package in the car, and then return to the store. The police opened the car and seized the package, which they believed contained stolen property. The court held that the automobile exception did not apply because the vehicle was parked, immobile, and unoccupied at the time the police first *encountered* it. Thus, there was lacking an individualized exigent circumstance that justified the search of the vehicle. *Id.*

at 33. Here, the state argues that the "automobile exception" is applicable because defendant was driving the van past the officer's location when the officer first encountered it. According to the state,

"The mere fortuity that defendant was able to park her car and step out of it before the police could conduct a traffic stop to keep her from driving further does not alter the fact that defendant's vehicle was mobile when first encountered."

We addressed the "mobility" component of the "automobile exception" in more detail in *State v. Mosley*, 178 Or App 474, 38 P3d 278 (2001), *rev den*, 334 Or 121 (2002), and in *State v. Burr*, 136 Or App 140, 901 P2d 873 (1995), *rev den*, 322 Or 360 (1995). In *Mosely*, we said, "although the meaning and contours of 'encounter' as used in the case law are somewhat amorphous, it is clear that merely observing a vehicle from a distance without any show or exercise of police authority is not an 'encounter' for purposes of the automobile exception." 178 Or App at 479. In *Burr*, we observed that "[t]he rationale underlying the automobile exception is to prevent evidence of criminal activity from being quickly moved out of the locality in which the warrant must be sought." 136 Or App at 149. Those principles provide the answer to the state's argument. The "encounter" in this case first occurred when Tarvin confronted defendant inside the store. At that point in time, there was no exigency relating to the mobility of the car.

Finally, the state argues that probable cause and exigent circumstances support the warrantless search. The state points to the fact that defendant had left her five-year-old child in the car while she went into the store, a place where Tarvin had probable cause to believe that controlled substances likely were. However, the officer did not testify that he searched the car because of any exigency involving defendant's child. Rather, he told the trial court that he conducted the search incident to defendant's arrest. That testimony is supported by the containers he searched inside the car: a cardboard box behind the center console, a fold-down compartment between the front seats, and the glove compartment of the automobile. Accordingly, we reject the state's argument.

Affirmed.