Submitted on record and briefs November 7, 2005, reversed and remanded
March 8, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# DAREN WADE NEWPORT,
*Appellant.*

## 02CR1990FE; A123949

130 P3d 792

James N. Varner filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

After the trial court denied his motion to suppress evidence, defendant was convicted of crimes involving the possession, manufacture, and delivery of marijuana. He appeals, arguing that the warrantless search of a backpack that officers found on the front seat of his truck, after he had been arrested approximately 10 feet from the vehicle, violated his rights under Article I, section 9, of the Oregon Constitution.[1] The state argues that the trial court correctly applied the "search incident to arrest" exception to the warrant requirement. We reverse and remand.

The following facts are undisputed. While on a general patrol one afternoon in Roseburg, Officer Crouse noticed a tan Toyota pickup truck with a tan shell parked in a lot near two taverns, the Wild Rose and Restin Red's. The driver, Crouse noticed, was a white male who appeared to be between 30 and 40 years old, wearing a distinctive camouflage hat. The driver and the truck exactly matched the description of a drug dealer and his vehicle that Crouse had heard from an unnamed informant while on duty at the Douglas County Courthouse some three weeks earlier. His interest "piqued," Crouse watched while the driver and his passenger appeared to be engaged in a hand-to-hand exchange under the truck's dashboard; although he could not see their hands, Crouse was convinced that such an exchange was occurring by virtue of the motions that he *could* see—the participants were looking at what was in their hands and "passing things around."

At that point, Crouse, who was relatively inexperienced as a police officer—he had been on the job only 18 months—called for another officer, Koberstein, who had extensive training and experience in drug cases. After Crouse briefed him on what he had observed, Koberstein confirmed

---

[1] Article I, section 9, of the Oregon Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

that Crouse's informant was a known drug user whose information had proved reliable in the past, and that drug transactions frequently occurred in the parking lot they were observing.

The two officers entered the Wild Rose. When they spotted defendant, they asked him if he would come outside with them. He agreed. They left the tavern and walked to a spot approximately 10 feet from the truck. There, Koberstein told defendant that he suspected drug activity was afoot, and he requested consent to search his person. Defendant consented. Koberstein found a cell phone, a wallet containing $1,900 in cash, a wad of loose bills totaling $138, and two small notebooks. In one notebook, Koberstein saw notations that appeared to him to be records of drug transactions, including one that read, next to a name, "15 oz Mex." According to Koberstein, the amount of money that the notations referred to approximated the amount of money found on defendant's person. Based on what Crouse had told him and on the contents of defendant's pockets, Koberstein reached the conclusion that defendant was a "mobile drug dealer."

The officers then turned their attention to a backpack that they observed on the front seat of defendant's truck. Koberstein asked defendant if he could search it, and defendant, appearing nervous, told him that he could not. The officer did so anyway. Inside he found the evidence that defendant sought unsuccessfully to suppress.

Although this incident occurred within a few blocks of the Douglas County Courthouse during business hours on a weekday, neither officer, confronted with defendant's refusal to consent to the search of his backpack, tried to obtain a search warrant.

■  Under Article I, section 9, of the Oregon Constitution, a warrantless search is presumed to be unreasonable and is therefore unlawful unless it falls within one of the existing exceptions to the warrant requirement. *State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994). The state has the burden of proving by a preponderance of the evidence that such an exception exists. *Id.* at 31 n 6; ORS 133.693(4). In this case, the state relies on the "search incident to arrest" exception. That exception allows a warrantless search when,

taking into consideration all of the surrounding circumstances, the search is necessary to protect the arresting officers, to prevent the destruction of evidence, or to discover evidence related to the crime for which the defendant is under arrest. *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994). The last justification, however, does not give police plenary authority to search for relevant evidence whenever there is a valid arrest; if there is no danger to officers or risk of destruction of evidence, the search must be reasonable in time, place, and scope. *State v. Caraher*, 293 Or 741, 758-59, 653 P2d 942 (1982).

■      The state does not contend that the search of the backpack was justified by concerns for officer safety or preservation of evidence; they argue only that they had probable cause to arrest defendant for drug-related crimes, that the backpack could have contained evidence of those crimes, and that the search was reasonable in time, place, and scope. We agree that probable cause existed; the match between the informant's information and defendant's clothing and vehicle, the observed interaction between defendant and his passenger, and the contents of defendant's pockets add up to information that would lead a reasonable person to believe that, more likely than not, defendant's backpack would contain evidence of crimes. We also agree that the search was for evidence relevant to the crime under investigation—that is, the search was reasonable in scope—and that it occurred within a reasonable time after defendant's arrest. The more difficult issue is whether a search of a container inside of a car that defendant was 10 feet away from is reasonable with respect to place.

        The state and defendant both rely on existing case law. The state cites *State v. Hartley*, 96 Or App 722, 773 P2d 1356, *rev den*, 308 Or 331 (1989). In that case, police searched the trunk of the defendant's car, despite the fact that the defendant was not in the car and there was no danger that he would drive it away. We held that the search was lawful. Defendant relies on *State v. Hite*, 198 Or App 1, 107 P3d 677 (2005). In that case, the defendant was arrested inside a restaurant after police received a tip that the car was stolen. Police subsequently opened the trunk, found a backpack there, opened the backpack, and found the evidence that the

defendant later sought to suppress. We agreed with the defendant that the search was not reasonable; the backpack was "not within defendant's control at the time of the arrest. Defendant was arrested inside the restaurant, so any search was limited to defendant's person and the belongings in his immediate possession inside the restaurant." *Id.* at 7-8.

In a recent case with facts remarkably similar to the ones in the present case, we resolved the apparent tension between *Hartley* and *Hite* in an analysis that is fatal to the state's position here. In *State v. Meharry*, 201 Or App 609, 120 P3d 520 (2005), *rev allowed*, 340 Or 106 (2006), police received a tip that the defendant was engaging in dangerous driving activity. A police officer subsequently saw her van parked at a convenience store. He went into the store and observed signs of intoxication; she appeared dazed, her speech was slow and slurred, her eyes were bloodshot, and she had an apparently recent puncture wound the size of a needle on the back of her hand. *Id.* at 611. As the officer questioned her, she swayed badly. Suspecting that she had committed a crime, the officer asked her to step outside to perform field sobriety tests. She consented and failed. At that point, while they were outside the store near her vehicle, the officer arrested her. A search of her person disclosed a syringe with a needle attached. He then searched the vehicle, "including the inside of a cardboard box," and found evidence of controlled substances. *Id.* at 612.

Thus, in both *Meharry* and this case, a police officer spots a vehicle and driver and, based on an informant's description, he suspects that the driver has engaged in criminal activity. He follows the suspect into a nearby commercial establishment and asks the suspect to accompany him to a spot outside, near the vehicle. There, he develops information giving him probable cause to arrest the suspect. He then searches the vehicle for evidence related to the offense for which he has made the arrest.

■ In *Meharry*, we held that the search was not justified under the "search incident to arrest" exception to the warrant requirement. 201 Or App at 617. We agreed with the state that the search was related to the crime for which the suspect was validly arrested and that a search of the suspect's *person*

was justified, but we disagreed with respect to the search of her car. *Id.* at 615. We held that

> "[a] lawful search incident to an arrest is limited in scope to the person and to the belongings in the person's immediate possession because there is no further intrusion into the possessory and privacy interests that an arrested person has in his or her person and in the belongings in the person's immediate possession. Such an intrusion has already occurred as a result of the arrest * * *."

*Id.* The privacy and possessory interests in other objects, however, has not been relinquished.

We find no meaningful distinction between this case and *Meharry*. We therefore reverse and remand.

Reversed and remanded.