Argued and submitted January 28, reassigned March 4, the decision of the Court of
Appeals is affirmed in part and reversed in part; the decision of the trial court is
reversed and case is remanded for trial November 20, 1986

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# JERALD C. HERBERT,
*Petitioner on Review.*

## (TC 29153; CA A28263; SC S32163)

729 P2d 547

Lent, J., dissented and filed opinion in which Linde, J., joined.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause and filed the petition for petitioner on review. With him on the petition and additional memoranda was Gary D. Babcock, Public Defender for Oregon, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent on review.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

CARSON, J.

Lent, J., dissented and filed an opinion in which Linde, J., joined.

## CARSON, J.

The issue in this case is whether the arresting police officer lawfully seized a paperfold[1] that he had observed defendant remove from his clothing following defendant's arrest for a crime unrelated to criminal activity in drugs.

While crossing a store parking lot, defendant was arrested on an outstanding warrant for failure to appear on a charge of Driving While Suspended. Defendant told the arresting officer that he wanted to get some identification from the truck in which he had been riding. Defendant walked to the truck. The officer followed him. Defendant got into the truck, leaving the door open, sat down and reached into the bib pocket of his overalls. He pulled out a paperfold and, while attempting to distract the officer with his other hand, placed the paperfold on an open shelf beneath the glove compartment in the truck.

The officer testified that, based upon his training and experience in the identification of controlled substances and the circumstances surrounding defendant's removal of the paperfold from his clothing, he believed that the opaque paperfold contained contraband. He reached through the open door and picked up the paperfold, asking defendant, "What is this?" Defendant answered, "What is what?" The officer showed the paperfold to defendant, but defendant gave no response.

The officer took defendant to jail. At the police station, the officer opened the paperfold and field tested the contents. The test revealed "the presence of cocaine." The officer then sent the paperfold to the State Crime Laboratory for chemical analysis, which confirmed the contents as cocaine. No search warrant was obtained.

Defendant was indicted for Possession of a Controlled Substance. ORS 475.992(4). He filed a motion to suppress the evidence of cocaine on the grounds that the search and seizure of the paperfold were: (1) warrantless; (2) without consent; (3) not incident to arrest; and (4) not based

---

[1] The paperfold seized from defendant was made from a page torn out of a magazine. The edges were folded in so that the contents would not fall out. It measured one inch by one-half inch.

upon probable cause. The state argued that the limited search of the truck and the seizure of the paperfold were valid under the doctrines of search incident to arrest and plain view, citing *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966), and *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971).

The trial court suppressed the evidence of the paperfold and its contents, concluding that the officer did not have probable cause to believe that the paperfold contained contraband, and thus that a crime was being committed in his presence, which would justify the seizure.

The state appealed the pre-trial suppression order, pursuant to ORS 138.060(3). The only issue that the state appealed was whether the police officer had probable cause lawfully to seize the paperfold from the truck in which defendant was sitting.

The Court of Appeals considered the case *in banc.* The majority concluded that the officer had probable cause to make a warrantless seizure of the paperfold under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. *State v. Herbert,* 75 Or App 106, 705 P2d 220 (1985). The majority reversed the suppression order as to the paperfold and went on to consider the validity of the subsequent opening of the paperfold and the testing of its contents. The majority concluded that these subsequent events must be analyzed separately, and that because there was neither practical necessity nor exigent circumstances, a search warrant was required, citing *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983). The majority affirmed the suppression of the evidence of the contents of the paperfold under Article I, section 9. Three separate opinions were also filed in that court.

Defendant petitioned for review on two grounds: (1) that the Court of Appeals did not give proper deference to the trial court's findings of historical fact or to the inferences flowing therefrom; and (2) that the Court of Appeals' majority misapplied this court's decision in *State v. Lowry, supra.*

## PROBABLE CAUSE

 Appellate courts are bound by the trial court's findings of historical fact, but not by the trial court's legal conclusions. *Krummacher v. Gierloff,* 290 Or 867, 869, 627 P2d 458 (1981); *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). The determination of probable cause is a legal, not a factual, conclusion. Probable cause does not require certainty.

The trial court made the following findings of fact:

"1. The officer had the normal training received by police officers for the detection of and identification of controlled substances.

"2. The paper fold was distinguishable from ordinary paper only by its folded shape, not by the kind of quality of paper that it was.

"3. The paper was opaque.

"4. The defendant was neither a known user or trafficker in the illicit business of controlled substances.

"5. Defendant was being arrested on a nonrelated, i.e. not related to the drug charge, traffic matter.

"6. The defendant removed the paper fold from his bib overalls front pocket in the presence of the officer and in a manner that seemed to be furtive to the officer.

"7. The officer was suspicious that the paper fold contained cocaine."

The trial court concluded:

"* * * In this case, before me, there is no bottle through which the contents can be seen, nor is there any suspicion of the presence of a controlled substance.

"It was possible that the paper fold might contain cocaine. The officer had seen it before in a paper fold and had been taught to suspect that cocaine was transported in that manner. A possibility is not enough. * * * The paper fold could have just as possibly held small, unsnelled fishhooks, pieces of a calculator which had been disassembled and were being taken to a repairman, a broken necklace or a chain that girls wear that was being taken to the jeweler, or a number of other things, such as radish seeds.

"In *State v. Alpert,* [52 Or App 815, 629 P2d 878 (1981)], cocaine in a bank envelope was suppressed as well as cocaine in a ladies compact. It seems to me that if the container is not

transparent/translucent, or of such an odd nature (balloon with contents in shirt pocket), or a pliable container which lends itself to palpable discernment, there will have to be more circumstances present than those here to support probable cause to seize."

■■ Defendant argues that the trial court's statement that the paperfold could just as possibly have been used to store or transport small items, such as unsnelled fishhooks, jewelry or radish seeds, establishes that an opaque paperfold is not such a unique container of illicit drugs that it, without more, provides probable cause to believe that it contains a controlled substance. Some containers of illicit drugs may be so uniquely associated with the storage and transportation of controlled substances that their unique packaging alone might provide, to an officer with training and experience in the area of drug detection, probable cause to believe they contain a controlled substance. Examples of such unique containers might be balloons or tinfoil bindles. *See, e.g., Texas v. Brown,* 460 US 730, 103 S Ct 1535, 75 L Ed 2d 502 (1983) (officer had probable cause to believe a tied-off balloon contained an illicit substance); *State v. Lowry, supra,* 295 Or at 359 (Jones, J., specially concurring). However, we are not here required to decide whether an opaque paperfold is such a unique container of illicit drugs. In addition to the shape of the container, other facts gave the officer probable cause to believe that the paperfold contained a controlled substance. These additional facts were: (1) defendant was under arrest and being taken to jail where he would have been searched; (2) defendant attempted to distract the officer while defendant furtively removed the paperfold from his pocket; and (3) defendant failed to look for or get any identification from the truck, which was the reason he gave the officer for wanting to return to the vehicle. When these additional facts are considered together with the paperfold, there were sufficient facts to give the officer probable cause to believe that the paperfold contained contraband. We conclude that the Court of Appeals gave proper deference to the trial court's findings of historical fact and to the inferences consistent therewith. The paperfold was lawfully seized. *See State v. Keller,* 265 Or 622, 628, 510 P2d 568 (1973); *State v. Elkins, supra.*

■ The state argues persuasively that the only issue properly before this court (or the Court of Appeals) is whether

the officer had probable cause to seize the paperfold. In the trial court, defendant moved to suppress the evidence of the paperfold and its contents for the reason that the paperfold was illegally seized. The issues argued to the trial court were: (1) whether the officer was lawfully in the place where he observed the paperfold in plain view; and (2) whether the officer had probable cause to believe the paperfold contained contraband.[2]

The only question presented in the state's appeal to the Court of Appeals was: "Did the arresting officer lawfully seize a paperfold from the car in which defendant was sitting?" Defendant did not cross-appeal, but stated for the first time in his respondent's brief that the subsequent search of the paperfold without a warrant was unlawful. Nevertheless, the Court of Appeals addressed the issue of the subsequent opening of the paperfold and the testing of its contents, holding both unlawful.

Because the Court of Appeals addressed the issue and because no additional evidence need be developed in the trial court on this issue, which is an issue of law and not of fact, we need not remand this case to the trial court to make a determination of law only to have the review process start all over. The facts and the issue are now before this court.

We have stated that the officer had probable cause to seize the paperfold and that the officer believed that the paperfold contained contraband. Because the officer, based upon his experience, had probable cause to believe that the paperfold contained contraband, he had the right to search the paperfold for controlled substance and, therefore, had the right to open that container. Once the container was opened and the contraband discovered, he had the right to test it. *State v. Owens,* 302 Or 196, 729 P2d 524 (1986).

The trial court erred in suppressing the evidence of the paperfold. That part of the Court of Appeals' decision reversing the suppression of the paperfold is affirmed. That

---

[2] By letter opinion, the trial court stated that the sole issue in this case was: "Did [the officer] have reasonable grounds to believe that the paper fold contained contraband and, therefore, a crime was being committed in his presence which justified seizure of the paper fold?"

part of the Court of Appeals' decision affirming the suppression of the contents of the paperfold is reversed. This case is remanded for trial.

**LENT, J.,** dissenting.

As in *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), the police opened a container and chemically analyzed its contents. Unlike in *Owens,* the container was opaque. Perhaps for this reason, the majority describes the opening of the container as a "search." *Cf. State v. Owens, supra,* 302 Or at 199. The majority concludes that the police had the right to open the container because a police officer, based on his experience, had probable cause to believe that a controlled substance would be found within the container. The majority also concludes that the warrantless testing of the substance was constitutional, citing *Owens.*

Probable cause alone, however, does not justify a warrantless search. *See, e.g., State v. Matsen/Wilson,* 287 Or 581, 601 P2d 784 (1979). The majority does not justify the warrantless opening of the container under any exception to the warrant requirement. In addition, for the reasons stated in my dissent in *State v. Owens, supra,* 302 Or at 215, the majority has not justified the warrantless testing of the contents of the container.

Linde, J., joins in this dissenting opinion.