Argued and submitted May 28, affirmed September 24, 1997

# STATE OF OREGON,
*Respondent,*

*v.*

# JACK LEROY POULSON,
*Appellant.*

## (F95-02-0147C; CA A92280)

945 P2d 1084

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

### RIGGS, P. J.

Defendant appeals from his convictions for delivery and possession of a controlled substance, possession of less than an ounce of marijuana and carrying a concealed weapon. Defendant assigns error to the denial of his motion to suppress evidence of the warrantless search of his vehicle and of a later search of his home conducted pursuant to a search warrant. Because we affirm the court's ruling under Article I, section 9, of the Oregon Constitution, we need not consider the state's argument as to the effect of Ballot Measure 40, enacted by the people in 1996.[1]

On September 1, 1994, Police Officer Kilgore was dispatched to a rental storage unit, the scene of an altercation between defendant and Seaquist, who was attempting to repossess a truck owned or claimed by defendant. Seaquist told Kilgore that defendant had threatened him with a gun as he was attempting to hook the truck to the tow truck. Defendant had another vehicle in the storage unit, a 1966 Ford pickup truck. Kilgore asked defendant if he could pat him down for weapons, and defendant agreed, saying, "No problem." Defendant told Kilgore that he had a knife in his shoe. Kilgore found and seized a small knife that was hidden in defendant's boot and covered by his pant leg. Kilgore asked defendant whether he had threatened Seaquist with use of a gun, and defendant told him that he had told Seaquist that he had several guns in his 1966 Ford pickup truck and that if Seaquist towed the other truck he would shoot Seaquist. Kilgore asked defendant for consent to search the 1966 Ford pickup truck. Kilgore made no threats or promises to defendant to obtain his consent to search. Defendant told Kilgore, "Go ahead," that there were weapons in the 1966 Ford pickup truck and that he did not mind if Kilgore searched it. Defendant did not limit the scope of his consent.

When Kilgore opened the passenger door of the 1966 Ford pickup truck, he saw a .44 magnum Ruger revolver lying on a duffel bag and a fanny pack, which was lying separately with a belt wrapped around it. The fanny pack was

---

[1] We note that defendant makes no separate argument under the federal constitution.

large enough to contain a weapon. The trial court found that Kilgore opened it and

> "found such drug paraphernalia as razor blades, straws, scales, powder grinder and a pipe. He also observed a film container which he knew through his training and experience often contained illegal drugs. Thus he opened the container and found two small bags of powdery substance. He recognized the powdery substance to be methamphetamine."

Kilgore arrested defendant for possession of a controlled substance and carrying a concealed weapon. Defendant's 1966 Ford pickup truck was taken to the city shops, and defendant later signed a written consent for its search. Nothing else was found.

Later, in February 1995, police officers conducted a search of defendant's home, vehicle and person pursuant to a search warrant and found scales, marijuana seeds, 29 baggies containing either marijuana residue or methamphetamine residue, three loaded guns, various drug paraphernalia and methamphetamine. Defendant was arrested at that time and charged with possession and delivery of a controlled substance.

■　　　Defendant moved to suppress the evidence of the search of the truck. The trial court denied the motion, finding that defendant had consented to the search. The first question raised by defendant on appeal with regard to the search of the truck is whether defendant's consent to search the vehicle was voluntarily given.

■　　　The state has the burden of showing that defendant's consent was voluntary under the totality of the facts and circumstances. *State v. Greason*, 106 Or App 529, 535, 809 P2d 695, *rev den* 311 Or 643 (1991). Voluntariness is a legal conclusion and not a finding of fact, *State v. Anfield*, 95 Or App 568, 571, 770 P2d 919 (1989), and on appeal the court must assess anew whether the facts suffice to meet constitutional standards. *State v. Bowen*, 137 Or App 327, 331, 904 P2d 1076 (1995), *rev den* 323 Or 74 (1996). The relevant inquiry is "whether, under the totality of the facts and circumstances, consent to search was improperly compelled or induced." *Greason*, 106 Or App at 535.

Under that standard, we conclude that defendant's consent was voluntary. Defendant contends that, as in *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1989), he was merely acquiescing in the officer's "plain intent to search," because he was not advised of his Miranda rights, he was not read a consent-to-search form and he was not told that he could refuse to consent if he so desired. However, the failure to advise defendant of his right to refuse consent or to read a written consent form does not invalidate the consent. *State v. Flores*, 280 Or 273, 276-79, 570 P2d 965 (1977). Those are merely among the factors to consider in determining the voluntariness of the consent. *Id.* The record shows that defendant was not threatened or even pressured by police. His consent was not "improperly compelled or induced." We conclude that under the totality of the circumstances his consent was voluntary and that the search of his truck was lawful under Article I, section 9.

■      Relying on *State v. Lane*, 135 Or App 233, 898 P2d 1358 (1995), defendant contends, further, that Kilgore's warrantless opening of the film canister found in the truck went beyond the reasonable scope of the consent. The state relies on the automobile exception as justification for the warrantless search, distinguishing *Lane*. Under the automobile exception, "if the police have probable cause to believe that a person's automobile, which is mobile when stopped by police, contains contraband or crime evidence," they may conduct a warrantless search of the vehicle for those items. *State v. Burr*, 136 Or App 140, 145, 901 P2d 873, *rev den* 322 Or 360 (1995), *quoting State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986). Defendant concedes that his truck was "mobile" for purposes of the automobile exception under *Burr*, 136 Or App at 145. The question is whether, at the time he opened the canister, Kilgore had objective probable cause to search for contraband or crime evidence.

As the state contends, we conclude that Kilgore's discovery of the drug paraphernalia with the film canister, together with his knowledge and experience that film canisters found close to drug paraphernalia often contain drugs, gave him grounds reasonably to believe that there were drugs in defendant's truck. *Lane*, on which defendant relies,

is distinguishable. In *Lane*, a police officer stopped a pickup truck after it made an abrupt turn into the parking lot of a convenience store. The defendant appeared to be nervous and agitated, and the officer noticed something on the truck's console that turned out to be a marijuana pipe. The officer determined that the pipe contained residue of marijuana. A subsequent inventory of the defendant's truck yielded a gun, the marijuana pipe, a small scale, and a small, black film canister. The film canister was on the front seat. The police officer opened the canister and discovered methamphetamine. *Id.* at 236. We held that the search of the film canister was not objectively reasonable, because the police officer had no grounds to believe that it contained anything other than film. *Lane* at 242. The record in *Lane* contained little information about where the film canister was found in relation to the scale. In reversing the trial court's denial of the defendant's motion to suppress, we said that

> "a film canister is not the type of container that is so uniquely associated with the storage and transportation of controlled substances that it, alone, might provide an officer with training and experience probable cause to believe that it contains a controlled substance." *Lane*, 135 Or App at 240.

Here, the circumstances giving rise to discovery of the canister were quite different. Kilgore found the canister in defendant's fanny pack, which Kilgore had been authorized to search and which also contained numerous items of drug paraphernalia, including razor blades, scales, a powder grinder and a pipe. Kilgore testified that, in his experience, when a film canister is found close to drug paraphernalia, it often contains drugs. The closeness of the canister to drug paraphernalia, combined with Kilgore's knowledge that when canisters are found in such circumstances they often contain drugs, distinguishes this case from *Lane*. Accordingly, we conclude that, when Kilgore discovered the contents of the fanny pack, he had objective probable cause to believe that defendant's truck contained a controlled substance and that his opening of the canister was reasonably within the scope of a search for that contraband.

Defendant further challenges the sufficiency of a February 1995 affidavit that provided the basis for the issuance of a February 2, 1995, search warrant that led to the discovery of numerous items of contraband and to his February 1995 arrest for possession and delivery of a controlled substance. Defendant contends that the affidavit did not establish probable cause, because it relied "too heavily on uncorroborated hearsay," contained information from the alleged unlawful search of his truck in September 1994, and contained stale information. As we have held, the September 1994 search of defendant's truck was lawful, and the affidavit therefore could properly refer to it.

In considering the sufficiency of the affidavit under Article I, section 9, we

> "review to determine whether the information in the affidavit was sufficient to allow a neutral and detached magistrate to conclude that there was probable cause * * *. An affidavit is sufficient to support a search warrant if the magistrate could reasonably conclude that the facts recited in the affidavit are true and that the items to be seized probably will be found in the location to be searched."

*State v. Wheelon/Zook*, 137 Or App 63, 69-70, 903 P2d 399 (1995). We examine the facts in the affidavit along with any reasonable inference that can be drawn from them. *State v. Lynch*, 119 Or App 97, 100, 849 P2d 556 (1993). In reviewing the sufficiency of the affidavit, we give deference to the issuing magistrate and resolve doubtful or marginal cases in the light of the preference for warrants. We construe the affidavit in a common sense, nontechnical and realistic fashion. The affidavit need establish only probable cause to believe that evidence will be found at the place to be searched; it does not require certainty. *State v. Grimes*, 135 Or App 497, 499, 899 P2d 1201 (1995).

For the purposes of our review, the trial court's findings contain an adequate summary of the affidavit:

> "In the Affidavit in support of the search warrant, Officer Kenneth Seanor * * * sets forth his experience and training in the identification, methods of use, and methods of sale of controlled substances. He states that on January

31, 1995, Caprice Locke, former wife of Defendant, telephoned him about some drug activity regarding her 8 year old son and his biological father, the Defendant herein. In the Affidavit, Officer Seanor states: 'About 2 weeks ago, Locke told me that Jarrod spent some time with [defendant] at [defendant's] apartment in La Grande.' The boy Jarrod had seen [defendant] 'rolling his own cigarette' and he confronted [defendant] about smoking 'that stuff.' The Affidavit recites that Locke had 'never known [defendant] to roll his own cigarettes' and that '[defendant's] involvement with marijuana was one of the leading causes of the divorce.' Locke further reported, as set forth in the Affidavit, that her son had made statements about [defendant] driving to Pendleton 'about three weeks ago' and selling some 'baking powder to a man.' The boy was reported to have watched [defendant] 'sell two baggies, one with baking powder and one with other spices.'

"The Affidavit further sets forth that on February 2, 1995, the Officer interviewed Defendant's son, who confirmed the trip to Pendleton and delivery by [defendant] of two baggies. He also confirmed that [defendant] was rolling a cigarette, but did not say that [defendant] had smoked it. The Officer's impression was that the boy was being incomplete or vague 'because he loves his Father and does not want anything to happen to him.'

"The Affidavit further sets forth the arrest and subsequent confiscation of drug paraphernalia from the Defendant on September 1, 1994. A copy of Officer Kilgore's case report * * * was attached and incorporated in the Affidavit."

Further, the affiant recited that Locke said that Jarrod told her that defendant smoked a hand-rolled cigarette in his apartment and that Locke had told him that defendant had been involved in a drug operation at an earlier time when married to Locke.

Defendant contends that the information in the affidavit provided by Locke and concerning the September 1994 search of defendant's truck is stale. In evaluating the affidavit, "the lapse of time after which information becomes stale depends on all the circumstances." *State v. Gale/Rowden*, 105 Or App 489, 497, 805 P2d 158, *rev den* 311 Or 427 (1991). Apart from information concerning defendant's drug involvement during the time when he was married to Locke, the

other information provided by the affiant is less than six months old. Considering the nature of charges to which the information is claimed to relate, that information specifically concerning the discovery in defendant's truck of drugs and the *implements* of distribution, *i.e.*, scales and a powder grinder, when viewed in the context of the entire affidavit, *Gale / Rowden*, 105 Or App at 498, provides reason to believe that defendant was involved in a continuing drug operation and that drugs were likely to be found in his home and vehicle at the time the affiant applied for the warrant. *State v. Wilson*, 120 Or App 382, 387, 852 P2d 910, *rev den* 317 Or 584 (1993).

■ Finally, we reject defendant's suggestion that the information in the affidavit from his son should be disregarded as unreliable and uncorroborated hearsay. The son's statements, when considered with the other information in the affidavit about defendant's drug possession, provided a proper basis for the inference that the son saw drugs and could help to provide probable cause that seizable evidence would be found in defendant's residence and vehicle. *Compare State v. Goff*, 134 Or App 92, 96, 894 P2d 1207 (1995) (child's identification of alleged marijuana as "green vegetable material" that looked similar to "parsley stuff").

Affirmed.