Argued and submitted February 22, affirmed November 1, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL LYNN STOCK, JR.,
*Appellant.*

# D0300780M; A123778

146 P3d 393

John L. Susac, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Division, Office of Public Defense Services.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.*

LANDAU, P. J.

---

\* Ortega, J., *vice* Ceniceros, S. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for escape in the third degree. ORS 162.145. He assigns error to the trial court's denial of his motion to suppress evidence of a controlled substance discovered by a police officer conducting an inventory of a car in which defendant was a passenger. Defendant contends that the officer violated the police department's vehicle inventory policy by opening a closed container—a small plastic bag that had been placed inside a folded bottle cap—that the officer discovered, along with a used syringe and meth pipe, under defendant's car seat. The state argues that the presence of the plastic bag, in conjunction with the drug paraphernalia found next to it, gave the officer probable cause to believe that drugs were present and that opening the plastic bag constituted a reasonable search "incident to an arrest" for which no warrant was required. We agree with the state and therefore affirm.

The relevant facts are not in dispute. Defendant was a passenger in a car that a Beaverton Police Officer, Cockreham, stopped for a traffic infraction. Cockreham determined that there was an outstanding warrant for the driver's arrest. In the course of arresting the driver, Cockreham asked defendant and another passenger to step out of the car so that the officer could conduct an inventory of its contents. During that inventory, Cockreham found the following items under the seat where defendant had been sitting: a used syringe containing apparent drug residue, a glass methamphetamine pipe, and a bottle cap that was folded over and that had a small plastic bag protruding from it.

Believing that the bottle cap contained drugs, the officer opened it and extracted the bag. It contained a crystalline substance, later tested and determined to be methamphetamine. Cockreham asked the driver of the car who owned the drugs, and the driver indicated that they belonged to defendant. Cockreham asked another police officer on the scene, Carroll, to handcuff defendant; when Carroll attempted to do so, defendant fled. A foot chase ensued and defendant was later apprehended.

Based on his conduct of fleeing the scene, defendant was charged with third-degree escape. Before trial, defendant moved to exclude evidence of the drugs that Cockreham had found on the ground that they were the result of an illegal search. Defendant argued that, under the Beaverton Vehicle Inventory Policy, Cockreham was not allowed to open closed containers such as defendant's folded bottle cap.

At the hearing on defendant's motion, Cockreham testified that he had first seen the car as it pulled out of an apartment complex where the police frequently had responded to drug-related calls. Cockreham also testified that, when he found the bottle cap during the inventory, he believed, based on his training and experience, that it contained drugs. When asked whether there was anything distinctive about the container that led him to the conclusion that it was a drug container and not simply trash, Cockreham responded, "its proximity to the * * * pipe and the syringe, being folded up in a way where it was containing a plastic bag * * * I almost had no doubt what was inside of it."

The trial court denied defendant's motion to suppress evidence of the drugs, finding that the police officer conducted the inventory in accordance with the applicable policy. After a trial to the court on stipulated facts, defendant was convicted of third-degree escape.

■ On appeal, defendant renews his argument that Cockreham violated the vehicle inventory policy when he unfolded the bottle cap and opened the plastic bag. It follows, argues defendant, that Cockreham relied on illegally obtained evidence when he decided to arrest defendant and that defendant's arrest itself was therefore illegal. On that basis, defendant challenges his conviction for third-degree escape, arguing that he cannot be guilty of escape because he was not lawfully under arrest. *See* ORS 162.145 (providing that it is a defense to a prosecution for escape that the person charged with escape was in custody pursuant to an illegal arrest).

In response, the state does not argue that the opening of the bottle cap was a legitimate component of the vehicle inventory; it argues instead that defendant's arrest was

lawful because the arresting officers had probable cause to believe that the bottle cap contained a controlled substance and were therefore entitled to open it as a search incident to defendant's arrest.

■ We may affirm a decision for a reason different from one argued to the trial court if the facts in the existing record provide adequate grounds to do so and the opposing party would not have created a different record had the issue been raised. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). In this case, the relevant facts are undisputed, and defendant, in his supplemental brief in response to the state's alternative argument, does not assert that he would have made a different record had the state raised the argument earlier. We therefore turn to the question whether the officer's opening of the bottle cap was a lawful search incident to arrest.

■ In *State v. Walker*, 173 Or App 46, 51, 20 P3d 834 (2001), we explained that a police officer conducting a vehicle inventory lawfully may open a closed container without a warrant in only two circumstances: (1) the discovered container "announces its contents" to such an extent that opening it does not invade a protected privacy interest and, thus, does not constitute a search, *see State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986), or (2) opening the container is justified by probable cause and some exception to the warrant requirement.[1] Accordingly, our analysis of whether an officer conducting a vehicle inventory is entitled to open a closed container proceeds as follows: We first ask whether the container "announced its contents" to such an extent that the

_____

[1] The analytical distinction between whether a container "announces it contents" and whether an officer has probable cause to believe that a container holds drugs unfortunately has been blurred in some of our cases. *See, e.g., State v. English*, 164 Or App 580, 994 P2d 165 (1999), *rev den*, 331 Or 244 (2000); *State v. McCrory*, 84 Or App 390, 734 P 2d 359 (1987). Although closely related, those are distinct inquiries. When a container, because of its unique or transparent quality, announces its contents, there is no search at all. *Owens*, 302 Or at 206. When a container does not announce its contents but—because of its nature and the context in which it is found—can be said more likely than not to contain contraband, there is a search, but one that may nevertheless be justified by a recognized exception to the warrant requirement. *State v. Lane*, 135 Or App 233, 239, 898 P2d 1358, *rev den*, 322 Or 360 (1995). The result often may be the same, but the analytical paths are distinct.

owner retained no cognizable privacy interest in its contents. If so, our analysis ends, because the opening of such a container was not a "search" at all under Article I, section 9, of the Oregon Constitution. If the container did not "announce its contents," we next ask if the officer conducting the inventory nevertheless had probable cause to believe the container's contents were illicit and, if so, whether a warrantless search of the container was justified under a recognized exception to the warrant requirement, such as officer safety, exigent circumstances, or as a search incident to an arrest. *See, e.g., State v. Lane*, 135 Or App 233, 239, 898 P2d 1358, *rev den*, 322 Or 360 (1995) ("[I]f in the course of the inventory process the officer develops probable cause to believe that the arrestee has committed a crime other than the one for which he or she was arrested, the officer may conduct a search incident to the presumed arrest for that other crime.").

We begin with the question whether the container in this case—a bottle cap bent around a plastic bag—may be said to "announce it contents," and we readily conclude that it does not. Whether a container "announces it contents" depends on whether those contents are so plainly obvious that there is no privacy interest to protect. In *Owens*, for example, the court held that, because a small transparent vial containing drugs "announced its contents," the officer who opened it and tested its contents had not conducted a "search" that is subject to the protection of Article I, section 9. 302 Or at 206. The exception is thus analogous to the plain view exception; it depends only on the nature of the container itself—*i.e.*, whether by its smell, appearance, or other directly observable features, it "announces it contents"—and is thus independent of the context in which the container was found or the subjective knowledge and experience of the officer who found it. *Id.*; *see also State v. Kruchek*, 156 Or App 617, 622, 969 P2d 386 (1998), *aff'd by an equally divided court*, 331 Or 664, 20 P3d 180 (2001) (holding that the *Owens* exception for containers that "announce their contents" applies only to those that "do so in a way that announces that contraband is their *sole* content" (emphasis in original)).

There is nothing about a bottle cap that is bent around a plastic bag, *per se*, that can be said to announce to the world that it contains drugs and only drugs. Indeed, there

is no evidence that bottle caps around plastic bags are often used in such a manner. Although small plastic bags are very frequently used to carry drugs, *see, e.g.*, *State v. Rocha-Ramos*, 161 Or App 306, 985 P2d 217 (1999) (officer testified that drugs are often packaged in such bags); *State v. Hester*, 153 Or App 247, 956 P2d 1052, *rev den*, 327 Or 432 (1998) (same), they obviously have a multitude of other benign uses. In any event, plastic bags are not so uniquely associated with carrying drugs that the contents of the bag in this case, though concealed by a bent bottle cap, was so obvious as effectively to be in plain view. We therefore conclude that defendant retained a cognizable privacy interest in the container's contents, and the officer's opening of it constituted a search under Article I, section 9.

■        We turn to the question whether the officer's search of the closed container nonetheless was permissible because he had probable cause and an exception to the warrant requirement was applicable. Probable cause exists only if the arresting officer subjectively believes—based on the underlying facts and the officer's training and experience—that it is more likely than not that an offense has been committed and that belief is objectively reasonable. *Owens*, 302 Or at 204; *see also State v. Barraza*, 206 Or App 505, 509, 136 P3d 1126 (2006). Whether an officer may be said to have probable cause to believe that a particular closed container contains drugs depends on the nature of the container itself, as well as on the context in which the container was found and on the knowledge and experience of the officer who finds it. The fact that one might be able to conceive of a benign purpose for a container does not defeat the existence of probable cause; the determinative question is whether, in light of the officer's training and experience, the officer's belief that the container contained a controlled substance was reasonable. *State v. English*, 164 Or App 580, 584, 994 P2d 165 (1999), *rev den*, 331 Or 244 (2000).

■        Some containers, by their very nature, may be so commonly associated with the storage of controlled substances that their packaging alone provides, to an officer with proper training and experience in the subject of drug detection, probable cause to believe that they contain a controlled

substance. *State v. Herbert*, 302 Or 237, 242, 729 P2d 547 (1986). Balloons and aluminum foil or paper "bindles" are examples of such containers. *Id.*; *see also State v. McCrory*, 84 Or App 390, 734 P2d 359 (1987) (finding that a paperfold bindle is so closely associated with carrying drugs that its presence, by itself, gives rise to probable cause). Other containers, such as film canisters, are frequently associated with drugs but not exclusively so; their presence may or may not give rise to probable cause, depending on the context in which they are found. We have for example, found that in some contexts a film canister can give rise to probable cause, *see, e.g.*, *State v. Poulson*, 150 Or App 164, 945 P2d 1084 (1997) (film canister found directly alongside drug paraphernalia provides probable cause), while in other circumstances not, *see, e.g.*, *State v. Lanig*, 154 Or App 665, 669, 963 P2d 58 (1998) ("A film canister is not so uniquely associated with the storage and transportation of drugs that, by itself, it suggests that it contains drugs."); *Lane*, 135 Or App at 239 (film canister in same car as marijuana pipe does not provide probable cause).

In addition to the qualities of the container itself, other circumstances may give rise to probable cause. In *Herbert*, for example, the defendant was arrested on an outstanding warrant for driving while suspended. During the course of the arrest, the arresting officer observed the defendant surreptitiously reach into his pocket, pull out a paperfold and place it in a compartment in the dashboard. 302 Or at 239. The Supreme Court determined that the totality of circumstances was enough to give the arresting officer probable cause to believe that the paperfold contained drugs: in addition to the fact that paperfolds are often used to carry drugs, the defendant's furtive behavior strongly suggested that he was attempting to dispose of the container so that it would not be discovered on his person after he was arrested. *Herbert*, 302 Or at 242; *see also Lane*, 135 Or App at 242 (determining that the specific conduct of suspects regarding unopened containers can elevate an officer's suspicions to probable cause).

The presence of drug paraphernalia can, in some circumstances, give rise to probable cause that a nearby container contains drugs. Two cases are particularly instructive

in that regard. In *Lane*, a police officer conducting an inventory of the defendant's pickup truck found a gun, a marijuana pipe, a small scale, and a film canister. The film canister was on the front seat. The police officer opened the canister and discovered methamphetamine. 135 Or App at 236. We held that the search of the film canister was not objectively reasonable, because the police officer did not have sufficient grounds to believe that it contained anything other than film. *Id.*

In *Poulson*, by contrast, an officer found a film canister inside a fanny pack that he had been authorized to search. Alongside the film cannister was a plethora of drug paraphernalia, including razor blades, scales, a powder grinder, and a pipe. The officer opened the film canister and found cocaine. We held that the officer's discovery of the drug paraphernalia "together with his knowledge and experience that film canisters found close to drug paraphernalia often contain drugs, gave him grounds reasonably to believe that there were drugs" present in the canister. 150 Or App at 168. We distinguished the circumstances in *Lane* by noting that, unlike *Lane*, where the canister was found in a different location in the truck than the drug paraphernalia, in *Poulson*, all the items were found in exactly the same place. "The *closeness* of the canister to drug paraphernalia, combined with [the officer's] knowledge that when canisters are found in such circumstances they often contain drugs, distinguishes this case from *Lane*." *Id.* at 169 (emphasis added).

Applying the foregoing principles to the facts of this case, we conclude that Cockreham had probable cause to believe that the bottle cap folded around the plastic bag that he found under defendant's seat contained drugs. Cockreham testified that he had "almost no doubt" that the cap was concealing drugs inside the bags. Under the circumstances, we conclude that that belief was objectively reasonable: Cockreham was conducting an inventory of a car that he had earlier noticed was being driven suspiciously in an area that he knew to be a frequent source of drug calls. The bag in question was found on the floor of the car under defendant's seat, next to a methamphetamine pipe and a used syringe containing apparent drug residue. In that sense, this case recalls *Poulson* in that the container was found in the immediate

vicinity of drug paraphernalia. Moreover, a plastic bag, much like a film canister, is often used to carry drugs. Indeed, a plastic bag that is partially stuffed into a folded bottle cap, when found next to drug paraphernalia, is arguably inherently more suspicious than the film canister found by the officer in *Poulson*. We therefore conclude that, at the point at which Cockreham found the syringe, the methamphetamine pipe, and the plastic bag, he had probable cause to believe that the crime of possession of a controlled substance had occurred.

Because the officer had probable cause to believe that possession of a controlled substance had been committed, a reasonable search incident to arrest for evidence of that crime was justified. The exception for a search incident to an arrest allows a warrantless search when, "taking into consideration all of the surrounding circumstances, the search is necessary to protect the arresting officers, to prevent the destruction of evidence, or to discover evidence related to the crime for which the defendant is under arrest." *State v. Newport*, 204 Or App 489, 493, 130 P3d 792 (2006). A search for evidence related to the crime, however, must be reasonable in time, place, and scope. *State v. Caraher*, 293 Or 741, 758-59, 653 P2d 942 (1982). As the Supreme Court explained in *Owens*, the Oregon Constitution authorizes a reasonable investigation, incident to an arrest for a particular crime, of closed containers, such as "wallets, purses, cigarette cases and other personal 'effects,' found on or immediately associated with the arrestee," when it is reasonable to believe that evidence of the crime might be located therein. 302 Or at 202. In addition, an officer who has formulated probable cause to arrest a suspect for a crime may perform a search incident to arrest for evidence of the crime even if the officer has not yet articulated to the person being arrested that that is the crime for which he is being arrested. *Id.* at 204.

In this case, the record shows that the officer's search was limited to the contents of the plastic bag itself, which he had found immediately under defendant's seat, and which he opened immediately. The search was thus reasonable in time, place, and scope.

Affirmed.