Argued and submitted September 26, 2008, reversed and remanded July 1, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## BRIAN DONALD EDMISTON,
*Defendant-Appellant.*

Deschutes County Circuit Court
05FE0501ST; A133360

211 P3d 340

Rebecca A. Duncan, Chief Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Carson, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

The issue in this case is whether the detection of a small plastic baggie of unknown contents in defendant's possession was sufficient to furnish probable cause to arrest defendant for possession of a controlled substance, as proscribed by *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). Defendant was convicted of that crime and assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of searches made incident to his arrest. We review the trial court's findings for errors of law, *State v. Warner*, 136 Or App 475, 478, 901 P2d 940 (1995), and reverse.

We state the facts consistently with the trial court's explicit and implicit findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Our task is to "decide whether the trial court applied legal principles correctly to those facts." *Ehly*, 317 Or at 75.

On March 9, 2005, Deschutes County Sheriff's Deputy Crawford stopped defendant's car because of a headlight violation. Crawford asked for defendant's license, registration, and proof of insurance. While defendant looked through a day planner notebook for the requested documents, Crawford shined his flashlight though the car window and watched. He observed a small, clear, plastic baggie in the day planner, though he could not see the contents of the baggie. Crawford took the day planner from defendant, retrieved the baggie, opened it, and discovered methamphetamine residue on the inside of the baggie. He arrested and searched defendant and discovered methamphetamine and marijuana in defendant's pockets.

Defendant moved to suppress the drug possession evidence, arguing that the deputy's seizure and search of the baggie were not justified under Article I, section 9, of the Oregon Constitution[1] and that all evidence derived from that search was inadmissible. At the suppression hearing,

---

[1] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure * * *."

Crawford testified that the baggie was approximately one inch by one inch in size. Crawford further stated that he had specialized drug investigation training and had seen packaged methamphetamine hundreds of times. Crawford testified that, in the "vast majority of cases," methamphetamine in quantities intended for personal use is packaged in a one inch by one inch baggie and that he had seen something other than drugs in that type of baggie on only one occasion, when the baggie contained beads.

Crawford also testified that he had attempted to purchase one inch by one inch baggies for training purposes, but was not able to purchase them at stores such as "Wal-Mart, Safeway, Fred Meyer and Shopko" because they are a "specialty item." The trial court determined that observation of the baggie was sufficient to establish probable cause to justify seizure of the baggie:

> "These baggies * * * are not * * * ubiquitous, except for the packaging and possession of methamphetamine. They are not something in common use. And certainly by the officer's testimony, his training and experience has shown that they are not in common use for anything other than the packaging and possession of methamphetamine."

The trial court denied the motion to suppress, and this appeal followed.

■ On review, the parties agreed to the narrow issue before the court. That issue is whether the deputy's discovery of a portion of the baggie protruding from the day planner provided an objectively reasonable basis to believe that defendant was in possession of controlled substances, so as to justify his arrest and search incident to that arrest.[2] Thus, the search and seizure in this case could be sustained if

---

[2] The parties agree, and we concur, that the seizure and search of the baggie, as well as the subsequent search of defendant himself, were incident to defendant's arrest even though the seizure and search of the baggie occurred before defendant was placed under arrest. In *State v. Owens*, 302 Or 196, 204-05, 729 P2d 524 (1986), the Supreme Court determined that "a search incident to arrest is valid when it relates to a crime which there is probable cause to believe the arrestee has committed, and when it is reasonable in all the circumstances" and that the "timing of the actual charge is not relevant to determining the validity of a search incident to arrest." *See also State v. Warner*, 117 Or App 420, 424, 844 P2d 272 (1992) (search incident to arrest may precede actual arrest).

Crawford had probable cause to arrest defendant and the searches were otherwise reasonable. To establish probable cause, "[a]n officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986); *see also State v. Barraza*, 206 Or App 505, 509, 136 P3d 1126 (2006).

The parties do not dispute that, based on his observation of the baggie, Crawford subjectively believed that defendant was in possession of a controlled substance. Defendant argues, however, that the possession of the baggie is insufficient, by itself, to establish a probability that the baggie contained controlled substances and that there was no probable cause to arrest him or to seize the baggie. The state contends that the trial court found that baggies of the type spotted are "not in common use for anything other than the packaging and possession of methamphetamine," so that defendant's possession of controlled substances was probable.

■■ Our cases identify several factors to evaluate probable cause to arrest or search based largely on evidence of a particular container that could contain drugs. Those factors include the nature of the container itself, the context in which the container was found, and the knowledge and experience of the investigating police officer. *State v. Stock*, 209 Or App 7, 13, 146 P3d 393 (2006). Some containers, by their very nature, are "so uniquely associated with the storage and transportation of controlled substances that their unique packaging alone might provide, to an officer with training and experience in the area of drug detection, probable cause to believe they contain a controlled substance." *State v. Herbert*, 302 Or 237, 242, 729 P2d 547 (1986). In *Herbert*, the Supreme Court noted that aluminum foil bindles and balloons "might be" examples of "such unique containers." *Id.*[3]

---

[3] In some circumstances, a container by its nature or transparency "announces its contents" so that there is no privacy interest to protect, and an examination of the contents by the state is not a search for constitutional purposes. *Owens*, 302 Or at 206. We recently explained that this exception to the warrant requirement is "analogous to the plain view exception; it depends only on the nature of the container itself—*i.e.*, whether by its smell, appearance, or other directly observable

Other containers, like film canisters, may often be connected with drugs, but do not necessarily give rise to probable cause without additional evidence. For instance, we have found that discovery of a film canister, together with corroborating circumstances of criminal activity or suspicious actions directed toward the closed container, can give rise to probable cause to arrest. *Compare State v. Lanig*, 154 Or App 665, 669, 963 P2d 58 (1998) (film canister "is not so uniquely associated with the storage and transportation of drugs that, by itself, it suggests that it contains drugs"), and *State v. Lane*, 135 Or App 233, 242, 898 P2d 1358 (1995) (film canister in same car as marijuana pipe does not provide probable cause in the absence of "specific conduct * * * toward the unopened containers"), *with State v. Poulson*, 150 Or App 164, 945 P2d 1084 (1997) (film canister found directly alongside numerous items of drug paraphernalia provides probable cause).

In *Stock*, we determined that very small plastic bags, although "very frequently used to carry drugs," are "not so uniquely associated with carrying drugs that the contents of the bag[s] * * * [are] so obvious as effectively to be in plain view." 209 Or App at 13. Thus, the baggie by itself is insufficient to demonstrate an objectively reasonable basis to support probable cause to arrest defendant. The question becomes whether Crawford's knowledge, experience, and testimony that methamphetamine is packaged in small plastic baggies in the "vast majority of cases," together with the trial court's finding that this type of baggie is "not in common use for anything other than the packaging and possession of methamphetamine," supplies the needed rationale.

■ We conclude that the evidence of Crawford's view of the baggie, together with that of his experience and training, is insufficient to establish probable cause that defendant possessed controlled substances. The fact that this type of baggie is commonly used to package methamphetamine does not

---

features, it 'announces its contents'—and is thus independent of the context in which the container was found or the subjective knowledge and experience of the officer who found it." *Stock*, 209 Or App at 12. The nature of the container, however, must be such as to announce "that contraband is [its] *sole* content." *State v. Kruchek*, 156 Or App 617, 622, 969 P2d 386 (1998), *aff'd by an equally divided court*, 331 Or 664, 20 P3d 180 (2001).

determine whether this particular baggie contained anything, much less controlled substances.

■ Crawford testified that, although generally this type of baggie is used to contain controlled substances, he had also seen it used to hold beads. That type of baggie did not "invariably contain controlled substances and nothing else." *State v. Fugate*, 210 Or App 8, 16, 150 P3d 409 (2006). A legitimate potential use for a container that is typically used to store and transport controlled substances does not preclude the existence of probable cause to arrest if the probable cause determination is otherwise sustainable. *Cf. State v. English*, 164 Or App 580, 585, 994 P2d 165 (1999) ("The point is not whether there are other possible uses of the vial but whether, in light of the officer's training and experience, it was probable that the vial contained controlled substances and nothing else.").

However, just as in the film canister cases, the existence of a legitimate potential use for a container requires that the probable cause determination based on a police officer's testimony about the typical use of the container be supplemented by other corroborating evidence. We observed in *Lanig*, with respect to whether observation of a film canister was sufficient evidence to extend a traffic stop:

> "It may well be true that, in some cases, film canisters have been used to store drugs. But to satisfy the requirement of reasonable suspicion, there must be some articulable basis for suspecting that *this defendant* was using the film canister for that purpose. In this case, there is no testimony that the officers suspected that defendant was under the influence of drugs. There was no testimony that she was in any way uncooperative or that she acted in a furtive or suspicious manner."

154 Or App at 669 (emphasis in original; citation omitted); *see also Herbert*, 302 Or at 242 (probable cause based on paperfold container corroborated by the defendant's suspicious behavior about the container).

Here, the deputy did not observe the contents of the baggie, a furtive gesture, signs of intoxication or previous drug use, drug paraphernalia, nervous behavior, or evasiveness on the part of defendant. The car was not being driven in

a suspicious manner or in an area of drug activities. *See Stock*, 209 Or App at 15 (probable cause for arrest as objectively reasonable on discovery of bottle cap bent around a small plastic bag; container found next to drug paraphernalia and car was driven in suspicious manner in drug activity area). In the absence of that type of evidence, the mere presence of the baggie did not give rise to probable cause to believe that defendant was in possession of controlled substances. Accordingly, the trial court erred in denying defendant's motion to suppress evidence of the seized items.

Reversed and remanded.