Argued and submitted March 16, 2016, reversed and remanded August 30, 2017

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LUIS PAUL GARCIA-CRUZ,
*Defendant-Appellant.*

Washington County Circuit Court
C132154CR; A157206

402 P3d 750

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jonathan Zunkel-deCoursey, Certified Law Student, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Patrick M. Ebbett, Assistant Attorney General.

Before Garrett, Presiding Judge, and Shorr, Judge, and Haselton, Senior Judge.*

_____

* Garrett, P. J., *vice* Flynn, J. pro tempore; Shorr, J., *vice* Duncan, J. pro tempore.

**SHORR, J.**

Defendant appeals a judgment convicting him of one count of unlawful possession of methamphetamine. ORS 475.894. After being arrested on a probation violation, an officer found methamphetamine in a folded piece of paper in defendant's wallet during an inventory of defendant's possessions. On appeal, defendant assigns error to the trial court's denial of his motion to suppress the evidence that the officer found in that piece of paper. Specifically, defendant argues that the folded paper was not a container that by its nature revealed its contents to the officer and, while the officer may have had probable cause to believe that the paper contained methamphetamine, opening the paper was a search under Article I, section 9, of the Oregon Constitution. Accordingly, the officer needed either a warrant or a well-established exception to the warrant requirement—both of which, the state concedes, are lacking in this case—to justify his actions. We agree with defendant that the folded paper did not by its very nature reveal its contents. Therefore, because the officer opened the paper and conducted that search without a warrant or under an exception to the warrant requirement, we reverse and remand.

We are bound by the trial court's findings of historical fact that are supported by constitutionally sufficient evidence in the record, and, if findings of historical facts are not made on all pertinent issues and there is evidence from which such facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We recite the following undisputed facts consistently with that standard.

Defendant was arrested by Beaverton Police Officer Andler for a probation violation for consuming alcohol. After Andler arrested defendant, Andler performed a search incident to arrest during which he removed a wallet from defendant's pocket. Andler did not search the wallet at that time. After Andler's search was complete, he transported defendant to the Beaverton Police Department where he processed defendant following the department's normal procedures for processing a defendant after an arrest.

When Andler was processing defendant, he undertook an inventory of defendant's property pursuant to the Beaverton Police Department's inventory policy. Under that policy, officers are required to conduct an inspection of defendants' wallets to document anything of value inside. However, as the state stipulated at a suppression hearing on the matter, that policy does not allow officers to open closed containers, including folded pieces of paper, found in wallets. Pursuant to that policy, Andler inspected defendant's wallet to inventory any valuables inside.

After opening defendant's wallet, Andler found and opened two folded pieces of paper that appeared to contain objects. One of those pieces of paper contained computer memory sticks. The other piece of paper contained methamphetamine. Based on that discovery of methamphetamine, defendant was also then charged with possession of methamphetamine and lodged at the Washington County Jail.

Defendant filed a motion to suppress the evidence that Andler discovered when he opened up the folded paper that contained methamphetamine. In that motion, defendant argued that (1) Andler's opening of the folded paper was not authorized under the inventory policy; (2) that conduct constituted a search for the purposes of Article I, section 9; and (3) that search was unlawful in that it was undertaken without a warrant and did not fall within any exception to the warrant requirement. In response, the state argued that, although Andler was not allowed to open the folded paper as part of his inventory process, the paper, by its very nature, revealed its contents when Andler felt it, and, therefore, no Article I, section 9, search that would require a warrant or warrant-requirement exception occurred. A hearing was held on the motion, at which Andler was the only witness.

At the suppression hearing, Andler testified that, when he found the folded paper containing methamphetamine in defendant's wallet, it felt like it contained a granulated crystal-like substance that Andler believed was "more likely than not" methamphetamine. However, Andler also noted that he was not "100 percent" certain of his conclusion. He stated that he believed that the folded paper could have also contained "tiny gems" or "some other" similar

substance instead of methamphetamine. Further, Andler testified that it was "rare" to find methamphetamine in folded paper because "probably 90 percent of the time" he finds methamphetamine in plastic bindles. He testified that the remaining 10 percent of the time he finds it in "whatever [was] available," including paper. Andler also acknowledged at the hearing that "seeing a piece of paper" did not "immediately alert" him to the idea that defendant possessed methamphetamine. He developed his opinion that the folded paper contained methamphetamine only after observing that the paper was folded "in a way to contain" something, rather than being folded "to fit into a pocket," and feeling the substance inside it through the paper.

After the hearing, the trial court denied defendant's motion. The trial court concluded that "the folded piece of paper, given its size, texture, etc., and its location announce[d] its contents as methamphetamine to the police officer." The case proceeded to a bench trial, and defendant was convicted. Defendant appealed and, on appeal, assigns error to the trial court's denial of his motion to suppress. Both parties reassert their arguments before the trial court to us on appeal.

We review a trial court's denial of a defendant's motion to suppress evidence for errors of law. *Ehly*, 317 Or at 75. Article I, section 9, states:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person to be seized."

The Article I, section 9, right against warrantless searches and seizures "protects both possessory and privacy interests in effects." *State v. Heckathorne*, 347 Or 474, 482, 223 P3d 1034 (2009). As a result, a search or seizure must be justified by "probable cause *and* either a judicially authorized warrant or a justification under an exception to the warrant requirement." *Id.* (emphasis in original).

However, not every intrusion by the government into a person's property constitutes a search or seizure. *See State*

*v. Ainsworth*, 310 Or 613, 617, 801 P2d 749 (1990) ("The constitutional provisions against unreasonable searches and seizures do not protect a right to keep any information, no matter how hidden or private, secret from the government. What the provisions forbid are unreasonable searches and seizures, *i.e.*, certain acts of government." (Internal quotation marks and emphasis omitted.)). For example, "[s]ome containers, those that by their very nature announce their contents (such as by touch or smell) do not support a cognizable privacy interest under Article I, section 9." *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986). As a result, "the examination of the contents of containers that 'announce their contents' is not a search at all," and, with regards to those containers, "an officer needs neither probable cause nor an exception to the warrant requirement to examine the container's contents." *State v. Fugate*, 210 Or App 8, 14, 150 P3d 409 (2006).[1]

In this case, the state acknowledges that Andler did not have a warrant and that no exception to the warrant requirement applied in these circumstances. As a result, the only issue before us is whether the folded paper in defendant's wallet by its very nature, including through its feel, revealed its contents to Andler such that by opening it he was not conducting an Article I, section 9, search.

"Whether a container 'announces it[s] contents' depends on whether those contents are so plainly obvious that there is no privacy interest to protect." *State v. Stock*, 209 Or App 7, 12, 146 P3d 393 (2006). The most common example of a container that meets that requirement is a container that is transparent. *Owens*, 302 Or at 206. However, opaque containers may also reveal their contents based on "the container's feel or smell, and, possibly, by its taste or sound" as informed by an officer's experiences and training. *Heckathorne*, 347 Or at 484-85.

---

[1] We recognize that in *Heckathorne* the Supreme Court noted that it preferred the phrase "may be revealed" to "may announce its contents" to describe the test at issue in this case; however, nothing indicates that the earlier cases using the "announce" phrasing are no longer good law. *See* 347 Or at 484-85, 484 n 11 (relying on *Owens* while changing the phrasing of the *Owens* test to "may be revealed").

For example, in *Heckathorne*, the Supreme Court affirmed a trial court's denial of a motion to suppress the results of a test of the contents of a metal cylinder seized during an inventory of the defendants' car. *Id.* at 486. In that case, officers seized a metal cylinder during an inventory of the defendants' car after the defendants were arrested for criminal trespass. *Id.* at 478. The officers then transferred the inventoried cylinder to the local state police office. *Id.* at 479. There, another officer took possession of the cylinder and "vented it properly" for storage. *Id.* (internal quotation marks omitted). When the cylinder was vented, the officer noticed "a strong odor of ammonia," a precursor chemical in the production of methamphetamine.[2] *Id.* Based on that smell, without a warrant, the officer tested the contents of the cylinder and the test was positive for anhydrous ammonia. *Id.* On appeal, the Supreme Court held that, once the officer had vented the cylinder and smelled ammonia, the container's contents had been revealed to that officer and the defendants no longer had a privacy interest in its contents. *Id.* at 485. As a result, the Supreme Court concluded that the test did not infringe any constitutionally protected privacy interest; therefore, no probable cause, warrant, or exception to the warrant requirement was needed to justify the officer's actions. *Id.*

Thus, in *Heckathorne*, the smell of ammonia *unambiguously* disclosed the opaque cylinder's contents—that is ammonia. Where, however, neither the characteristics of an opaque container nor the noninvasively observable or perceptible characteristics of its contents, as informed by an officer's training and experience, are uniquely identifiable with contraband, then the container does not "reveal its contents" for purposes of Article I, section 9. *State v. Walker*, 173 Or App 46, 20 P3d 834 (2001), exemplifies this dispositive distinction.

In *Walker*, we affirmed a trial court's grant of a motion to suppress evidence discovered in an opaque plastic bottle found during an inventory of the defendant's car. *Id.* at 52. In that case, after citing the defendant for driving

---

[2] It is illegal to possess a precursor substance to methamphetamine if a defendant has the intent to manufacture methamphetamine. ORS 475.967.

while suspended and failure to produce proof of insurance, an officer had the defendant's car towed. *Id.* at 48. Prior to the arrival of the tow truck, the officer performed an inventory of the defendant's car. *Id.* During that process, the officer discovered, wedged behind an armrest, a small plastic bottle made of opaque white plastic that the officer recognized "as the type of container that is passed out at weddings and holds bubbles to be blown by guests." *Id.* The officer picked the bottle up and noticed that it "rattled" rather than "slosh[ed]." *Id.* Given that auditory information, the officer believed that there was crack cocaine in the bottle and, as a result, opened it, discovering small chunks of crack cocaine. *Id.* at 49.

When we affirmed the trial court's order suppressing the evidence found in the bottle, we noted that the bottle was not "one of those containers that 'otherwise announce their contents.'" *Id.* at 50. We concluded that the container "was not one that is invariably used to store and transport controlled substances" because "the state produced no * * * evidence of the exclusivity of use of the opaque" bubble bottle as storage for drugs. *Id.* at 50-51 (internal quotation marks omitted). Further, we noted that the contents of the bottle were also not revealed when the officer shook the bottle and heard it rattle because "the bottle could have contained any number of small, hard objects that would have caused it to rattle when shook." *Id.* at 51. Consequently, we held that, when the officer opened the bottle, he was undertaking an Article I, section 9, search and needed probable cause and either a warrant or an exception to the warrant requirement to justify his actions. *Id.*

Turning back to the facts in this case, we conclude that, like the bubble bottle in *Walker*, the folded paper in this case did not by its very nature reveal its contents to the officer. First, the state did not provide evidence to the trial court that folded paper is a container "that is invariably used to store and transport controlled substances." *Id.* at 50 (internal quotation marks omitted); *see also Fugate*, 210 Or App at 16 (noting that a folded piece of tin foil did not reveal its contents to an officer where "there was no evidence that such containers invariably contain controlled

substances and nothing else").[3] The state produced no evidence "of the exclusivity of use of the" folded paper to store methamphetamine. *Walker*, 173 Or App at 51. In fact, the record actually demonstrates that people, including defendant, use folded paper to store other small objects, such as computer memory sticks, in their wallets. Further, Andler acknowledged that, when he saw the folded paper, he was not immediately alerted to the fact that the paper contained methamphetamine.

Second, the contents of the folded paper were not revealed by the paper's feel. Unlike the ammonia in *Heckathorne*, which was immediately recognizable—and, hence "revealed"—to the officer by its unique distinctive smell, nothing about the contents here was uniquely associated with methamphetamine. Andler testified that what he felt in the paper was a granulated, crystal-like substance that he believed—but was not "100 percent" certain—was methamphetamine. Andler testified that, based on the feel, the folded paper could have also contained "tiny gems" or "some other" similar crystalline substance instead of methamphetamine. The contents of the folded paper were not so "plainly obvious" that the feel of them revealed that the paper contained methamphetamine. *Stock*, 209 Or App at 12. Thus, as in *Walker*, where the contents of the bottle in that case were not revealed when the officer shook it because the rattling noise may have indicated that the bottle "could have contained any number of small, hard objects that would have caused it to rattle when shook," in this case, the feel of the substance in the folded paper did not reveal the contents of that paper to be methamphetamine, by its very nature, because what the officer felt only indicated that the paper could have contained a number of granulated crystal-like substances, nothing more specific.

In sum, notwithstanding that it was highly probable that the folded paper contained methamphetamine, that opaque receptacle did not reveal its contents. Consequently,

---

[3] *Accord State v. Herbert*, 302 Or 237, 242-43, 729 P2d 547 (1986) (noting that the unique shape of a folded piece of paper coupled with the fact that the defendant attempted to dispose of the paper while the officer was not looking gave the officer *probable cause* to believe that the folded paper contained drugs, but not addressing whether the folded paper announced its contents).

Andler, in opening the folded paper so as to expose its contents to view, conducted a warrantless search that was not justified by an exception to the warrant requirement. Because that search was unlawful, the trial court erred in denying the motion to suppress.

Reversed and remanded.